FILED
CLERK U.S. DISTRICT COURT

MAY 3 1 2012

CENTRAL DISTRICT OF CALIFORNIA
BY                                   DEPUTY

1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9          FOR THE CENTRAL DISTRICT OF CALIFORNIA

10                   February 2012 Grand Jury

11  UNITED STATES OF AMERICA,    )    CR No. **CR** 12 00527

12                  Plaintiff,   )    I N D I C T M E N T
                                 )
13           v.                  )    [21 U.S.C. § 846: Conspiracy to
                                 )    Possess with Intent to
14  JOHN DARRELL KROKOS,         )    Distribute and to Distribute
       aka "Walter,"             )    Cocaine; 21 U.S.C. § 848(a):
15     aka "Lord of the Beach,"  )    Continuing Criminal Enterprise;
       aka "Hulk,"               )    21 U.S.C. §§ 841(a)(1),
16     aka "JJ,"                 )    (b)(1)(A): Possession with
    JESUS ESTEBAN FELIX-LEON,    )    Intent to Distribute and
17     aka "M,"                  )    Distribution of Cocaine; 31
       aka "Professor,"          )    U.S.C. § 5332(a): Bulk Cash
18  JESUS FELIX-ALVAREZ,         )    Smuggling; 18 U.S.C.
       aka "LilM,"               )    §§ 1956(a)(2)(B), (a)(1)(B):
19     aka "Junior,"             )    Money Laundering; 21 U.S.C.
    ISMAEL ICHIRO TOMATANI-      )    § 843(b): Use Of A Communication
20  GUZMAN,                      )    Facility In Committing A Felony
       aka "H,"                  )    Drug Offense; 18 U.S.C. § 2:
21     aka "Charlie,"            )    Aiding and Abetting and Causing
    EDUARDO OLIVARES,            )    an Act to be Done]
22     aka "Eddie,"              )
    ROBERTO CARLOS VALLE,        )
23     aka "Ringo,"              )
       aka "Gordito,"            )
24  CARLOS JAVIER VERDUGO-       )
    MIRANDA,                     )
25     aka "El Cacheton,"        )
    DANIEL VERDUGO,              )
26     aka "Ricky,"              )
       aka "Lil Chop,"           )
27  FNU LNU,                     )
       aka "96,"                 )
28                               )

```
 1   UBALDO MADRIGAL-ROSALES,         )
       aka "Primo,"                   )
 2   INOCENCIO AISPURO-LIZARRAGA,)
       aka "Chencho,"                 )
 3   ZAID ABDUL WAKIL,                )
       aka "Alvin Boatright,"         )
 4   MANSOUR BOROUMAND,               )
       aka "Taliban,"                 )
 5   ANTONIO AKIRA-TOMATANI,          )
     ERNESTO CARLOS SALCEDO,          )
 6     aka "Ernie,"                   )
       aka "Ern,"                     )
 7     aka "E,"                       )
       aka "Aldo,"                    )
 8     aka "Sam,"                     )
     RIGOBERTO ORTEGA-GUZMAN,         )
 9     aka "Goldminer,"               )
       aka "GM,"                      )
10     aka "Uncle,"                   )
       aka "Jerry,"                   )
11   GURPREET SINGH KAILA,            )
     FAUSTO MEDINA,                   )
12   JASON MERRITT, and               )
     ANGELINA PARRA-FRANCO,           )
13                                    )
                    Defendants.       )
14                                    )
                                      )
15   _____ )
```

16        The Grand Jury charges:

17                           COUNT ONE

18                       [21 U.S.C. § 846]

19   A.   <u>DEFINITIONS AND GENERAL ALLEGATIONS</u>

20        1.    A BlackBerry is a wireless handheld communication

21   device that supports, among other things, electronic mail.  It

22   delivers information over the wireless data networks of mobile

23   phone service companies.

24        2.    Electronic mail ("email") is a store-and-forward method

25   of writing, sending, receiving, and saving messages over

26   electronic communication systems.

27        3.    Halo Secure is a service that provides cryptographic

28   privacy and authentication.  Halo Secure is often used for

1   signing, encrypting, and decrypting emails to increase the

2   security of email communications.

3       4.    At all relevant times herein, defendants used Halo

4   Secure devices and communicated with each other via email over

5   encrypted BlackBerry devices, among other means of communication,

6   in order to facilitate the importation, possession with intent to

7   distribute, and distribution of cocaine, a Schedule II narcotic

8   drug controlled substance.

9   B.   OBJECTS OF THE CONSPIRACY

10      Beginning on a date unknown, and continuing to on or about

11  June 6, 2012, in Los Angeles and Orange Counties, within the

12  Central District of California, and elsewhere, defendants JOHN

13  DARRELL KROKOS, also known as ("aka") "Walter," aka "Lord of the

14  Beach," aka "Hulk," aka "JJ" ("KROKOS"), JESUS ESTEBAN FELIX-

15  LEON, aka "M," aka "Professor" ("FELIX"), JESUS FELIX-ALVAREZ,

16  aka "LilM," aka "Junior" ("ALVAREZ"), ISMAEL ICHIRO TOMATANI-

17  GUZMAN, aka "H," aka "Charlie" ("I. TOMATANI"), EDUARDO OLIVARES,

18  aka "Eddie" ("OLIVARES"), ROBERTO CARLOS VALLE, aka "Ringo," aka

19  "Gordito" ("VALLE"), CARLOS JAVIER VERDUGO-MIRANDA, aka "El

20  Cacheton" ("C. VERDUGO"), DANIEL VERDUGO, aka "Ricky," aka "Lil

21  Chop" ("D. VERDUGO"), FNU LNU, aka "96" ("96"), MANSOUR

22  BOROUMAND, aka "Taliban" ("BOROUMAND"), ANTONIO AKIRA-TOMATANI

23  ("A. TOMATANI"), ERNESTO CARLOS SALCEDO, aka "Ernie," aka "Ern,"

24  aka "E," aka "Aldo," aka "Sam" ("SALCEDO"), RIGOBERTO ORTEGA-

25  GUZMAN, aka "Goldminer," aka "GM," aka "Uncle," aka "Jerry"

26  ("ORTEGA"), GURPREET SINGH KAILA ("KAILA"), FAUSTO MEDINA

27  ("MEDINA"), and JASON MERRITT ("MERRITT"), and others known and

28  unknown to the Grand Jury, conspired and agreed with each other

3

1  to knowingly and intentionally (1) possess with intent to
2  distribute, and (2) distribute, at least five kilograms of a
3  mixture and substance containing a detectable amount of cocaine,
4  a Schedule II narcotic drug controlled substance, in violation of
5  Title 21, United States Code, Sections 841(a)(1) and
6  841(b)(1)(A)(ii).
7  C.  MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE
8       ACCOMPLISHED
9       The objects of the conspiracy were to be accomplished in
10  substance as follows:
11       1.  Defendant KROKOS, in furtherance of the KROKOS Drug
12  Trafficking Organization ("KROKOS DTO"), would purchase cocaine
13  from suppliers in the United States and Mexico, including
14  defendants FELIX, ALVAREZ, OLIVARES, VALLE, and C. VERDUGO.
15       2.  Defendant KROKOS would acquire encrypted BlackBerry
16  devices ("EBDs") and distribute them to members of the KROKOS DTO
17  to facilitate the acquisition, storage, transportation, and sale
18  of cocaine.
19       3.  Defendant I. TOMATANI would oversee the delivery of
20  cocaine and money to cocaine purchasers and suppliers.
21       4.  Defendants KROKOS, FELIX, and ALVAREZ would kidnap,
22  torture, and arrange to kidnap and torture, co-conspirators whom
23  they believed stole cocaine and money from them.
24       4.  Defendants FELIX, ALVAREZ, I. TOMATANI, and A. TOMATANI
25  would arrange to receive ransom money from the family of co-
26  conspirators whom they believed stole cocaine and money from
27  them.
28       5.  Defendants I. TOMATANI, D. VERDUGO, 96, A. TOMATANI,

4

SALCEDO, and ORTEGA would store, transport, and sell cocaine.

6.   Defendant MEDINA would collect money from defendant ORTEGA.

7.   Defendants KROKOS, I. TOMATANI, and BOROUMAND would purchase and arrange for the purchase of cocaine from defendant OLIVARES.

8.   Defendants MERRITT and KAILA would transport cocaine to individuals purchasing cocaine from defendant KROKOS.

D.   OVERT ACTS

In furtherance of the conspiracy, and to accomplish the objects of the conspiracy, on or about the following dates, defendants KROKOS, FELIX, ALVAREZ, I. TOMATANI, OLIVARES, VALLE, C. VERDUGO, D. VERDUGO, 96, BOROUMAND, A. TOMATANI, SALCEDO, ORTEGA, KAILA, MEDINA, and MERRITT, and others known and unknown to the Grand Jury, committed various overt acts within the Central District of California, and elsewhere, including but not limited to the following:

**Delivery of EBDs to the KROKOS DTO**

1.   In October 2009, using coded language over a telephone, defendant KROKOS spoke to an undercover law enforcement officer ("UC1") and requested that UC1 provide EBDs to defendant KROKOS.

2.   In November 2009, defendant KROKOS received from an undercover law enforcement officer ("UC2") four EBDs in Puerto Vallarta, Mexico.

3.   On November 11, 2009, using coded language over an EBD, defendant KROKOS offered to sell cocaine and other controlled substances to UC2.

4.   On January 6, 2010, using coded language over an EBD,

1  defendant KROKOS contacted UC2 and agreed to pay $1,200 for the
2  renewal of service for the EBDs delivered to defendant KROKOS in
3  October 2009.

4      5.   On January 7, 2010, defendant I. TOMATANI delivered
5  $1,200 to UC1 for the renewal of service for the EBDs.

6      6.   On February 24, 2010, using coded language over an EBD,
7  defendant KROKOS contacted UC2 and asked to purchase four
8  additional EBDs.

9      7.   On March 11, 2010, defendant I. TOMATANI contacted UC1
10 and arranged to meet with UC1 later that night.

11     8.   On March 11, 2010, defendant I. TOMATANI received four
12 EBDs from UC1.

13     9.   In April 2010, defendant KROKOS received two EBDs
14 shipped to him in Puerto Vallarta, Mexico.

15     10.  On May 21, 2010, an unindicted co-conspirator received
16 two EBDs from UC2.

17     11.  In July 2010, defendant KROKOS received five EBDs
18 shipped to him in Puerto Vallarta, Mexico.

19     12.  On July 16, 2010, defendant I. TOMATANI received one
20 EBD from UC1.

21     13.  On July 31, 2010, defendant I. TOMATANI received three
22 EBDs from UC1.

23     14.  On September 24, 2010, defendant A. TOMATANI received
24 two EBDs from UC2.

25     15.  On December 2, 2010, two unindicted co-conspirators
26 received one EBD from UC2.

27     16.  On July 29, 2011, defendant C. VERDUGO and an
28 unindicted co-conspirator received one EBD from UC2.

6

17.  On September 20, 2011, defendant I. TOMATANI received one EBD from UC2.

18.  On January 13, 2012, defendant I. TOMATANI received one EBD from UC2.

19.  On January 18, 2012, defendant I. TOMATANI received one EBD from UC2.

### Delivery of 20 Kilograms of Cocaine and $421,800

20.  On July 15, 2010, using coded language over an EBD, defendant KROKOS arranged to deliver 20 kilograms of cocaine to an unindicted co-conspirator.

21.  On July 15, 2010, using coded language over an EBD, defendant KROKOS contacted defendant ALVAREZ to confirm that defendant KROKOS would acquire 20 kilograms of cocaine from defendants FELIX and ALVAREZ, for delivery to an unindicted co-conspirator, in exchange for $421,800.

22.  On July 15, 2010, using coded language over an EBD, defendant KROKOS asked defendant I. TOMATANI to check the quality of the cocaine in defendant I. TOMATANI's possession.

23.  On July 15, 2010, using coded language over an EBD, defendant I. TOMATANI confirmed with defendant KROKOS that defendant I. TOMATANI received a $200,000 down payment for 20 kilograms of cocaine from an unindicted co-conspirator.

24.  On July 15, 2010, using coded language over an EBD, defendant I. TOMATANI confirmed with defendant KROKOS that defendant I. TOMATANI delivered 20 kilograms of cocaine to an unindicted co-conspirator.

25.  On July 15, 2010, using coded language over an EBD, defendant I. TOMATANI confirmed with defendant KROKOS that

1  defendant I. TOMATANI received an additional $221,800 for 20

2  kilograms of cocaine.

3      26.  On July 15, 2010, using coded language over an EBD,

4  defendant KROKOS agreed with defendant ALVAREZ that $412,000

5  would be delivered to defendant ALVAREZ in exchange for 20

6  kilograms of cocaine, and that defendant KROKOS would keep the

7  remaining $9,800.

8              **Delivery of $600,000 and $127,000**

9      27.  On July 17, 2010, using coded language over an EBD,

10  defendant I. TOMATANI discussed with defendant ALVAREZ the

11  planned delivery of $600,000 to an unindicted co-conspirator and

12  the planned receipt of $127,000 from an unindicted co-conspirator

13  acting on behalf of defendant KROKOS.

14      28.  On July 17, 2010, using coded language over an EBD,

15  defendant I. TOMATANI confirmed with defendant KROKOS that

16  defendant I. TOMATANI received $127,000 from an unindicted co-

17  conspirator.

18      29.  On July 17, 2010, using coded language over an EBD,

19  defendant I. TOMATANI confirmed with defendant ALVAREZ that

20  defendant I. TOMATANI delivered $600,000 to an unindicted co-

21  conspirator.

22       **Delivery of $300,000 and 25 Kilograms of Cocaine**

23      30.  On July 19, 2010, using coded language over an EBD,

24  defendants KROKOS and ALVAREZ agreed that defendant KROKOS would

25  deliver money in exchange for 25 kilograms of cocaine.

26      31.  On July 19, 2010, using coded language over an EBD,

27  defendant KROKOS arranged for an unindicted co-conspirator to

28  deliver $300,000 to defendant I. TOMATANI as down payment for the

8

1  25 kilograms of cocaine.

2      32.  On July 19, 2010, using coded language over an EBD,

3  defendant I. TOMATANI confirmed with defendant KROKOS that

4  defendant I. TOMATANI had received $300,000 from an unindicted

5  co-conspirator.

6      33.  On July 20, 2010, using coded language over an EBD,

7  defendant I. TOMATANI confirmed with defendant KROKOS that

8  defendant I. TOMATANI had delivered 25 kilograms of cocaine to an

9  unindicted co-conspirator and would receive the remaining payment

10  the next day.

11         **Delivery of 46 Kilograms of Cocaine and $750,055**

12      34.  On August 23, 2010, using coded language over an EBD,

13  defendants KROKOS and I. TOMATANI discussed the delivery of

14  cocaine to an unindicted co-conspirator.

15      35.  On August 23, 2010, using coded language over an EBD,

16  defendant I. TOMATANI communicated with defendants A. TOMATANI

17  and SALCEDO to arrange for defendant SALCEDO to deliver 46

18  kilograms of cocaine to an unindicted co-conspirator.

19      36.  On August 23, 2010, using coded language over an EBD,

20  defendant I. TOMATANI confirmed with defendant ALVAREZ that

21  defendant SALCEDO had received 46 kilograms of cocaine.

22      37.  On August 25, 2010, defendant SALCEDO met with an

23  unindicted co-conspirator.

24      38.  On August 25, 2010, using coded language over an EBD,

25  defendant I. TOMATANI confirmed with defendant KROKOS that

26  defendant SALCEDO had met with an unindicted co-conspirator.

27      39.  On August 26, 2010, using coded language over an EBD,

28  defendant I. TOMATANI confirmed with defendant KROKOS that

defendant SALCEDO had delivered 46 kilograms of cocaine to an unindicted co-conspirator.

40. On August 26, 2010, using coded language over an EBD, defendant I. TOMATANI confirmed with defendants ALVAREZ and A. TOMATANI that defendant SALCEDO had received $750,055 from two unindicted co-conspirators.

### Delivery of $610,800

41. On August 27, 2010, using coded language over an EBD, defendant I. TOMATANI communicated with defendant ALVAREZ to arrange the delivery of $610,800 to an unindicted co-conspirator.

42. On August 27, 2010, using coded language over an EBD, defendant I. TOMATANI instructed defendant A. TOMATANI to package $610,800 for delivery.

43. On August 28, 2010, using coded language over an EBD, defendant I. TOMATANI asked defendant FELIX how defendant FELIX wanted defendant I. TOMATANI to handle defendant FELIX's share of the $610,800.

44. On August 28, 2010, using coded language over an EBD, defendant I. TOMATANI instructed defendant A. TOMATANI to deliver the $610,800 to defendant SALCEDO.

45. On August 30, 2010, using coded language over an EBD, defendant I. TOMATANI confirmed with defendants ALVAREZ and A. TOMATANI that defendant SALCEDO had delivered $610,800 to an unknown co-conspirator.

### Delivery of $85,000

46. On March 7, 2011, using coded language over an EBD, defendants KROKOS and I. TOMATANI discussed the receipt of $85,000 from an unindicted co-conspirator.

47. On March 7, 2011, using coded language over an EBD, defendant I. TOMATANI confirmed with defendant KROKOS that defendant I. TOMATANI had received $85,000 from an unindicted co-conspirator.

### Attempted Delivery of 20 Kilograms of Cocaine
### Delivery of $197,000

48. On March 23, 2011, using coded language over an EBD, defendants KROKOS, ALVAREZ, and ORTEGA agreed that defendant ORTEGA would receive 20 kilograms of cocaine.

49. On March 24, 2011, using coded language over an EBD, defendant ORTEGA informed defendant ALVAREZ that defendant ORTEGA had acquired $20,000 from an unidentified male.

50. On March 24, 2011, using coded language over an EBD, defendant ALVAREZ informed defendant KROKOS that defendant ORTEGA had erroneously received $20,000 instead of 20 kilograms of cocaine.

51. On March 24, 2011, using coded language over an EBD, defendant ORTEGA confirmed with defendant ALVAREZ that defendant ORTEGA had delivered $20,000 to defendant MEDINA.

52. On March 24, 2011, using coded language over an EBD, defendants KROKOS and ALVAREZ arranged to return money previously delivered to the KROKOS DTO as an advance payment for 20 kilograms of cocaine.

53. On March 24, 2011, using coded language over an EBD, defendant ALVAREZ confirmed with defendants ORTEGA and KROKOS that defendant ORTEGA delivered $197,000 to an unindicted co-conspirator.

///

## Receipt of an EBD by Defendant OLIVARES

54. On April 10, 2011, using coded language over an EBD, defendant KROKOS contacted UC2 to request the purchase of an EBD.

55. On April 11, 2011, defendant I. TOMATANI received an EBD from UC2.

56. In April 2011, defendant OLIVARES received the EBD that had been delivered to defendant I. TOMATANI on April 11, 2011.

57. On April 20, 2011, using coded language over an EBD, defendant I. TOMATANI provided defendant OLIVARES's telephone number to defendant KROKOS.

58. On April 20, 2011, using coded language over an EBD, defendant I. TOMATANI contacted defendant OLIVARES to discuss the purchase of cocaine from defendant OLIVARES.

## Delivery of Five Kilograms of Cocaine and $120,000

59. On April 14, 2011, using coded language over an EBD, defendants KROKOS and I. TOMATANI discussed the delivery of five kilograms of cocaine to an unindicted co-conspirator.

60. On April 14, 2011, using coded language over an EBD, defendant I. TOMATANI confirmed with defendant OLIVARES that defendant I. TOMATANI had delivered $120,000 to defendant OLIVARES's residence.

61. On April 14, 2011, defendant I. TOMATANI met with an unindicted co-conspirator.

## Delivery of $400,000

62. On April 18, 2011, using coded language over an EBD, defendants KROKOS and ALVAREZ instructed defendant ORTEGA to receive money from two unindicted co-conspirators.

63. On April 19, 2011, using coded language over an EBD,

1  defendant ORTEGA confirmed with defendant ALVAREZ that defendant

2  ORTEGA had received $400,000 from two unindicted co-conspirators.

### Delivery of 44 Kilograms of Cocaine

### and Sale of 15 Kilograms of Cocaine

5      64.  On May 3, 2011, using coded language over an EBD,

6  defendants ALVAREZ and KROKOS arranged for defendant ORTEGA to

7  receive 44 kilograms of cocaine.

8      65.  On May 3, 2011, using coded language over an EBD,

9  defendant ORTEGA received 44 kilograms of cocaine.

10     66.  On May 3, 2011, defendant ORTEGA stored 44 kilograms of

11  cocaine at a residence in Downey, California.

12     67.  On May 5, 2011, using coded language over an EBD,

13  defendant KROKOS instructed defendant ORTEGA to prepare 15

14  kilograms of cocaine for delivery.

15     68.  On May 5, 2011, using coded language over an EBD,

16  defendant ORTEGA confirmed with defendant KROKOS that defendant

17  ORTEGA had delivered 15 kilograms of cocaine to an unindicted co-

18  conspirator.

19     69.  On May 6, 2011, using coded language over an EBD,

20  defendant ALVAREZ informed defendant KROKOS that law enforcement

21  had arrested defendant ORTEGA.

### Kidnapping and Torture of Defendant ORTEGA

23     70.  On May 16, 2011, using coded language over an EBD,

24  defendant ALVAREZ informed defendant KROKOS that defendant ORTEGA

25  had falsely told defendant ALVAREZ that law enforcement had

26  seized 29 kilograms of cocaine and $342,000 from defendant ORTEGA

27  on May 5, 2011.

28     71.  On May 16, 2011, using coded language over an EBD,

1   defendant ALVAREZ told defendant KROKOS that defendant ALVAREZ

2   had kidnapped defendant ORTEGA.

3        72.  On May 16, 2011, using coded language over an EBD,

4   defendant FELIX informed defendant KROKOS that defendant FELIX

5   was torturing defendant ORTEGA.

6        73.  On May 16, 2011, using coded language over an EBD,

7   defendant ALVAREZ told defendant I. TOMATANI that defendant

8   ORTEGA had called defendant ORTEGA's son and made arrangements

9   for defendant ORTEGA's son to pay ransom money.

10       74.  On May 16, 2011, using coded language over an EBD,

11  defendant ALVAREZ told defendant I. TOMATANI that defendant

12  ALVAREZ had falsely made defendant ORTEGA believe that defendant

13  ORTEGA would be released after defendant ORTEGA's son paid ransom

14  money.

15       75.  On May 16, 2011, using coded language over an EBD,

16  defendants FELIX and ALVAREZ communicated with defendant I.

17  TOMATANI to arrange for the collection of ransom money from

18  defendant ORTEGA's son.

19       76.  On May 17, 2011, using coded language over an EBD,

20  defendant I. TOMATANI confirmed for defendant ALVAREZ that

21  defendant ORTEGA's son had paid $342,000 in ransom money.

22       77.  On May 17, 2011, using coded language over an EBD,

23  defendant FELIX told defendant I. TOMATANI that defendant FELIX

24  would continue to torture defendant ORTEGA following the receipt

25  of ransom money from defendant ORTEGA's son.

26       78.  On June 30, 2011, defendant FELIX instructed defendant

27  I. TOMATANI to arrange for the pickup of a second ransom payment

28  from defendant ORTEGA's son.

79.   On June 30, 2011, defendant I. TOMATANI instructed defendants A. TOMATANI and SALCEDO to receive a second ransom payment from defendant ORTEGA's son.

80.   On June 30, 2011, defendant A. TOMATANI confirmed with defendant I. TOMATANI that defendant SALCEDO had received $59,980 from defendant ORTEGA's son.

81.   On June 30, 2011, defendant I. TOMATANI confirmed with defendant FELIX that defendant SALCEDO received a $59,980 ransom payment from defendant ORTEGA's son.

### Delivery of 11 Kilograms of Cocaine

82.   On June 21, 2011, using coded language over a telephone, defendant BOROUMAND arranged to receive 11 kilograms of cocaine from defendant OLIVARES.

83.   On June 23, 2011, defendant OLIVARES delivered 11 kilograms of cocaine to defendant BOROUMAND.

### Delivery of 23 Kilograms of Cocaine

84.   On August 8, 2011, using coded language over an EBD, defendant C. VERDUGO instructed defendant D. VERDUGO that defendant D. VERDUGO would receive cocaine from defendant VALLE.

85.   On August 8, 2011, defendant VALLE delivered cocaine to defendants C. VERDUGO and D. VERDUGO.

86.   On August 10, 2011, using coded language over an EBD, defendants KROKOS and C. VERDUGO arranged for the delivery of 23 kilograms of cocaine to an unindicted co-conspirator.

87.   On August 10, 2011, defendants D. VERDUGO and 96 transported 23 kilograms of cocaine to a motel located in Bellflower, California.

88.   On August 10, 2011, defendants D. VERDUGO and 96

1  delivered 23 kilograms of cocaine to defendant MERRITT.

2      89.  On August 10, 2011, defendant MERRITT attempted to

3  transport 23 kilograms of cocaine to Seattle, Washington.

4  **Delivery of $245,010**

5      90.  On September 18, 2011, using coded language over an

6  EBD, defendants KROKOS and C. VERDUGO discussed the receipt of

7  approximately $200,000 from an unindicted co-conspirator.

8      91.  On September 19, 2011, defendants D. VERDUGO and 96

9  traveled to defendant VALLE's residence.

10      92.  On September 19, 2011, defendants D. VERDUGO and 96 met

11  with an unindicted co-conspirator.

12      93.  On September 19, 2011, using coded language over an

13  EBD, defendant C. VERDUGO confirmed with defendant KROKOS that

14  defendants D. VERDUGO and 96 had received $245,010 from an

15  unindicted co-conspirator.

16  **Delivery of $250,000**

17      94.  On September 19, 2011, using coded language over a

18  telephone, defendant VALLE agreed to deliver $250,000 to an

19  unindicted co-conspirator.

20      95.  On September 22, 2011, defendant VALLE delivered

21  approximately $250,000 to two unindicted co-conspirators.

22  **Delivery of 18 Kilograms of Cocaine**

23      96.  On September 26, 2011, using coded language over an

24  EBD, defendants KROKOS and C. VERDUGO arranged to deliver 18

25  kilograms of cocaine and receive $140,000 from unindicted co-

26  conspirators.

27      97.  On September 26, 2011, using coded language over an

28  EBD, defendant C. VERDUGO confirmed with defendant KROKOS that

defendant C. VERDUGO had received $190,000 from an unindicted co-conspirator.

98.  On September 27, 2011, using coded language over an EBD, defendant C. VERDUGO informed defendant KROKOS that defendant D. VERDUGO would deliver 18 kilograms of cocaine to an unindicted co-conspirator.

99.  On September 28, 2011, defendant KAILA received 18 kilograms of cocaine from an unidentified co-conspirator.

COUNT TWO

[21 U.S.C. § 848(a)]

Beginning on an unknown date, and continuing to on or about June 6, 2012, in Los Angeles and Orange Counties, within the Central District of California, and elsewhere, defendants JOHN DARRELL KROKOS, also known as ("aka") "Walter," aka "Lord of the Beach," aka "Hulk," aka "JJ" ("KROKOS"), JESUS ESTEBAN FELIX-LEON, aka "M," aka "Professor" ("FELIX"), and JESUS FELIX-ALVAREZ, aka "LilM," aka "Junior" ("ALVAREZ"), engaged in a continuing criminal enterprise in that defendants KROKOS, FELIX, and ALVAREZ knowingly and intentionally violated Title 21, United States Code, Sections 841(a)(1) and 846, including but not limited to the felony violations alleged in Counts One, Four, Nine, and Ten, which Counts are re-alleged and incorporated herein by reference as if fully set forth in this Count, all of which violations were part of a continuing series of felony violations of subchapters I and II of Title 21 of the United States Code, undertaken by defendants KROKOS, FELIX, and ALVAREZ in concert with at least five other persons with respect to whom defendants KROKOS, FELIX, and ALVAREZ occupied a position of organizer, supervisor, and manager, and from which continuing series of violations defendants KROKOS, FELIX, and ALVAREZ obtained substantial income and resources.

COUNT THREE

[21 U.S.C. § 846]

A.   OBJECTS OF THE CONSPIRACY

Beginning on a date unknown, and continuing to on or about July 18, 2011, in Los Angeles County, within the Central District of California, and elsewhere, defendants EDUARDO OLIVARES, also known as ("aka") "Eddie" ("OLIVARES"), UBALDO MADRIGAL-ROSALES, aka "Primo" ("MADRIGAL"), INOCENCIO AISPURO-LIZARRAGA, aka "Chencho" ("AISPURO"), and ZAID ABDUL WAKIL, aka "Alvin Boatright" ("WAKIL"), and others known and unknown to the Grand Jury, conspired and agreed with each other to knowingly and intentionally (1) possess with intent to distribute, and (2) distribute, at least five kilograms of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(ii).

B.   MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE ACCOMPLISHED

The objects of the conspiracy were to be accomplished in substance as follows:

1.   Defendants MADRIGAL and AISPURO would supply cocaine to defendant OLIVARES.

2.   Defendant OLIVARES would sell and deliver cocaine to defendant WAKIL.

3.   Defendant WAKIL would ship and transport cocaine to areas outside the Central District of California.

C.   OVERT ACTS

In furtherance of the conspiracy, and to accomplish the

objects of the conspiracy, on or about the following dates, defendants OLIVARES, MADRIGAL, AISPURO, and WAKIL, and others known and unknown to the Grand Jury, committed various overt acts within the Central District of California, and elsewhere, including but not limited to the following:

1.  On May 17, 2011, using coded language over a telephone, defendant OLIVARES agreed to deliver cocaine to defendant WAKIL.

2.  On May 19, 2011, defendant OLIVARES delivered 47 kilograms of cocaine to defendant WAKIL.

3.  On May 19, 2011, defendant WAKIL shipped 47 kilograms of cocaine from Los Angeles, California, using Federal Express.

4.  In May 2011, defendant WAKIL received 11.8 kilograms of cocaine from defendant OLIVARES in the Central District of California.

5.  On May 29, 2011, defendant WAKIL possessed 11.8 kilograms of cocaine in Arizona after obtaining the cocaine from defendant OLIVARES.

6.  On July 12, 2011, using coded language over a telephone, defendant OLIVARES agreed to deliver cocaine to defendant WAKIL.

7.  On July 15, 2011, using coded language over a telephone, defendant AISUPURO agreed to deliver cocaine to defendant OLIVARES.

8.  On July 15, 2011, using coded language over a telephone, defendant MADRIGAL agreed to deliver cocaine to defendant OLIVARES.

9.  On July 17, 2011, defendant OLIVARES delivered at least 20 kilograms of cocaine to defendant WAKIL in the Central

District of California.

10.   On July 18, 2011, defendant WAKIL possessed 20 kilograms of cocaine in Arizona after obtaining the cocaine from defendant OLIVARES.

COUNT FOUR

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii); 18 U.S.C. § 2(a)]

On or about May 5, 2011, in Los Angeles County, within the Central District of California, defendants JOHN DARRELL KROKOS, also known as ("aka") "Walter," aka "Lord of the Beach," aka "Hulk," aka "JJ," JESUS FELIX-ALVAREZ, aka "LilM," aka "Junior," ISMAEL ICHIRO TOMATANI-GUZMAN, aka "H," aka "Charlie," and RIGOBERTO ORTEGA-GUZMAN, aka "Goldminer," aka "GM," aka "Uncle," aka "Jerry," and others known and unknown to the Grand Jury, each aiding and abetting one another, knowingly and intentionally possessed with intent to distribute at least five kilograms, that is, approximately 29 kilograms, of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance.

COUNT FIVE

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii); 18 U.S.C. § 2(a)]

On or about May 19, 2011, in Los Angeles County, within the Central District of California, defendants EDUARDO OLIVARES, also known as ("aka") "Eddie," and ZAID WAKIL, aka "Alvin Boatright," and others known and unknown to the Grand Jury, each aiding and abetting the other, knowingly and intentionally possessed with intent to distribute at least five kilograms, that is, approximately 47 kilograms, of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance.

COUNT SIX

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii); 18 U.S.C. § 2(a)]

On or about May 29, 2011, in Los Angeles County, within the Central District of California, defendants EDUARDO OLIVARES, also known as ("aka") "Eddie," and ZAID WAKIL, aka "Alvin Boatright," and others known and unknown to the Grand Jury, each aiding and abetting the other, knowingly and intentionally possessed with intent to distribute at least five kilograms, that is, approximately 11.8 kilograms, of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance.

24

COUNT SEVEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii); 18 U.S.C. § 2(a)]

On or about June 23, 2011, in Los Angeles County, within the Central District of California, defendants EDUARDO OLIVARES, also known as ("aka") "Eddie," and MANSOUR BOROUMAND, aka "Taliban," and others known and unknown to the Grand Jury, each aiding and abetting the other, knowingly and intentionally possessed with intent to distribute at least five kilograms, that is, approximately 11 kilograms, of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance.

COUNT EIGHT

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii); 18 U.S.C. § 2(a)]

On or about July 18, 2011, in Los Angeles County, within the Central District of California, defendants EDUARDO OLIVARES, also known as ("aka") "Eddie," and ZAID WAKIL, aka "Alvin Boatright," and others known and unknown to the Grand Jury, each aiding and abetting the other, knowingly and intentionally possessed with intent to distribute at least five kilograms, that is, approximately 20 kilograms, of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance.

COUNT NINE

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii); 18 U.S.C. § 2(a)]

On or about August 9, 2011, in Los Angeles County, within the Central District of California, defendants JOHN DARRELL KROKOS, also known as ("aka") "Walter," aka "Lord of the Beach," aka "Hulk," aka "JJ," ROBERTO CARLOS VALLE, aka "Ringo," CARLOS JAVIER VERDUGO-MIRANDA, aka "El Cacheton," DANIEL VERDUGO, aka "Ricky," aka "Lil Chop," FNU LNU, aka "96," and JASON MERRITT, and others known and unknown to the Grand Jury, each aiding and abetting one another, knowingly and intentionally possessed with intent to distribute at least five kilograms, that is, approximately 23 kilograms, of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance.

                              COUNT TEN

      [21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii); 18 U.S.C. § 2(a)]

      On or about September 28, 2011, in Los Angeles County,
within the Central District of California, defendants JOHN
DARRELL KROKOS, also known as ("aka") "Walter," aka "Lord of the
Beach," aka "Hulk," aka "JJ," CARLOS JAVIER VERDUGO-MIRANDA, aka
"El Cacheton," and GURPREET SINGH KAILA, and others known and
unknown to the Grand Jury, each aiding and abetting one another,
knowingly and intentionally possessed with intent to distribute
at least five kilograms, that is, approximately 18 kilograms, of
a mixture and substance containing a detectable amount of
cocaine, a Schedule II narcotic drug controlled substance.

COUNT ELEVEN

[31 U.S.C. § 5332(a)]

On or about March 25, 2011, in Los Angeles County, within the Central District of California, and elsewhere, defendant FAUSTO MEDINA knowingly concealed more than $10,000 in currency, that is, approximately $497,795 in cash, in a conveyance and container, that is, a black 2001 Honda Civic, and attempted to transport the currency from a place within the United States, that is, California, to a place outside of the United States, that is, the Republic of Mexico, with the intent to evade the currency reporting requirement under Title 31, United States Code, Section 3516.

COUNT TWELVE

[21 U.S.C. § 846]

A.    OBJECT OF THE CONSPIRACY

Beginning on a date unknown, and continuing to on or about March 25, 2011, in Los Angeles County, within the Central District of California, and elsewhere, defendant FAUSTO MEDINA ("MEDINA"), and others known and unknown to the Grand Jury, conspired and agreed with each other to knowingly and intentionally aid and abet the distribution of at least five kilograms of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(ii), and Title 18, United States Code, Section 2(a).

B.    MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE ACCOMPLISHED

The object of the conspiracy was to be accomplished in substance as follows:

1.    Defendant MEDINA's co-conspirators would sell cocaine and other controlled substances to others.

2.    Defendant MEDINA would collect the proceeds of the sales of cocaine and other controlled substances on behalf of his co-conspirators.

3.    Defendant MEDINA would then transport those proceeds on behalf of his co-conspirators.

C.    OVERT ACTS

In furtherance of the conspiracy, and to accomplish the object of the conspiracy, on or about the following dates,

defendant MEDINA, and others known and unknown to the Grand Jury, committed various overt acts within the Central District of California, and elsewhere, including but not limited to the following:

1. On March 23, 2011, defendant MEDINA's co-conspirators arranged to deliver 20 kilograms of cocaine to a customer ("the customer").

2. On March 24, 2011, an unindicted co-conspirator erroneously deilvered $20,000 rather than 20 kilograms of cocaine to a co-conspirator acting on behalf of the customer.

3. On March 24, 2011, defendant MEDINA's co-conspirators arranged to retrieve the $20,000 that had been erroneously delivered to the customer, and to provide cocaine to the customer on March 25, 2011.

4. On March 24, 2011, defendant MEDINA received the $20,000 that had been erroneously delivered to the customer.

5. On March 25, 2011, defendant MEDINA transported approximately $497,795 in cash in two hidden compartments in a vehicle.

COUNT THIRTEEN

[18 U.S.C. §§ 1956(a)(1)(B)(I), 2]

On or about September 22, 2011, in Los Angeles County, within the Central District of California, and elsewhere, defendants ROBERTO CARLOS VALLE, also known as "Ringo," and ANGELINA PARRA-FRANCO, each aiding and abetting the other, knowingly and intentionally conducted, attempted to conduct, and willfully caused others to conduct, a financial transaction affecting interstate commerce, namely, a transfer of $148,490 in cash, knowing that the cash involved represented the proceeds of some form of unlawful activity, and which, in fact, involved the proceeds of specified unlawful activity, namely, the unlawful distribution of controlled substances, and the conspiracy thereof, in violation of Title 21, United States Code, Sections 841(a)(1) and 846, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity.

COUNT FOURTEEN

[21 U.S.C. § 843(b); 18 U.S.C. § 2(a)]

On or about August 23, 2010, in Los Angeles County, within the Central District of California, and elsewhere, defendants ISMAEL ICHIRO TOMATANI-GUZMAN, also known as ("aka") "H," aka "Charlie," ANTONIO AKIRA-TOMATANI, and ERNESTO CARLOS SALCEDO, aka "Ernie," aka "Ern," aka "E," aka "Aldo," aka "Sam," each aiding and abetting one another, knowingly and intentionally used a communication facility, that is, an encrypted BlackBerry device, in committing, causing, and facilitating the commission of an act constituting a felony under Title 21, United States Code, Section 846, namely, conspiracy to possess with intent to distribute and to distribute cocaine.

33

1

COUNT FIFTEEN

2

[21 U.S.C. § 843(b); 18 U.S.C. § 2(a)]

3     On or about August 29, 2010, in Los Angeles County, within

4 the Central District of California, and elsewhere, defendants

5 JESUS FELIX-ALVAREZ, also known as ("aka") "LilM," aka "Junior,"

6 ISMAEL ICHIRO TOMATANI-GUZMAN, aka "H," aka "Charlie," ANTONIO

7 AKIRA-TOMATANI, and ERNESTO CARLOS SALCEDO, aka "Ernie," aka

8 "Ern," aka "E," aka "Aldo," aka "Sam," each aiding and abetting

9 one another, knowingly and intentionally used a communication

10 facility, that is, a telephone, in committing, causing, and

11 facilitating the commission of an act constituting a felony under

12 Title 21, United States Code, Section 846, namely, conspiracy to

13 possess with intent to distribute and to distribute cocaine.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

34

COUNT SIXTEEN

[21 U.S.C. § 843(b); 18 U.S.C. § 2(a)]

On or about July 16, 2011, in Los Angeles County, within the Central District of California, defendants EDUARDO OLIVARES, also known as ("aka") "Eddie," UBALDO MADRIGAL-ROSALES, aka "Primo," INOCENCIO AISPURO-LIZARRAGA, aka "Chencho," and ZAID ABDUL WAKIL, aka "Alvin Boatright," each aiding and abetting one another, knowingly and intentionally used a communication facility, that is, a telephone, in committing, causing, and facilitating the commission of an act constituting a felony under Title 21, United States Code, Section 846, namely, conspiracy to possess with intent to distribute and to distribute cocaine.

COUNT SEVENTEEN

[21 U.S.C. § 843(b); 18 U.S.C. § 2(a)]

On or about August 9, 2011, in Los Angeles County, within the Central District of California, defendant JASON MERRITT, and others known and unknown to the Grand Jury, each aiding and abetting the other, knowingly and intentionally used a communication facility, that is, a telephone, in committing, causing, and facilitating the commission of an act constituting a felony under Title 21, United States Code, Section 846, namely, conspiracy to possess with intent to distribute and to distribute cocaine.

COUNT EIGHTEEN

[21 U.S.C. § 843(b); 18 U.S.C. § 2(a)]

On or about September 28, 2011, in Los Angeles County, within the Central District of California, and elsewhere, defendants ROBERTO CARLOS VALLE, also known as ("aka") "Ringo," aka "Gordito," and GURPREET SINGH KAILA, and others known and unknown to the Grand Jury, each aiding and abetting the other, knowingly and intentionally used a communication facility, that is, a telephone, in committing, causing, and facilitating the

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

1  commission of an act constituting a felony under Title 21, United

2  States Code, Section 846, namely, conspiracy to possess with

3  intent to distribute and to distribute cocaine.

4

5                              A TRUE BILL

6

7                              /s/

8                              _____
                               Foreperson

9

10  ANDRÉ BIROTTE JR.
    United States Attorney

11

12

13  ROBERT E. DUGDALE
    Assistant United States Attorney

14  Chief, Criminal Division

15  RODRIGO A. CASTRO-SILVA
    Assistant United States Attorney

16  Chief, OCDETF Section

17  TIMOTHY J. SEARIGHT
    Senior Litigation Counsel

18  OCDETF Section

19  BENJAMIN R. BARRON
    Assistant United States Attorney

20  OCDETF Section

21  JENNIFER L. WILLIAMS
    Assistant United States attorney

22  OCDETF Section

23

24

25

26

27

28

                                  38