Richard W. Raynor (SBN 162289)
LAW OFFICE OF RICHARD W. RAYNOR
407 N. Pacific Coast Highway, Suite 280
Redondo Beach, California 90277
Tel.: (424)257-0284
Fax: (424)258-9462
e-mail: richard@richardraynor.com
Attorney for Defendant
Jesus Esteban Felix, Jr.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America,<br>Plaintiff,<br>vs.<br><br>Jesus Esteban Felix, Jr.,<br>Defendant. | Case No. 2:12-cr-00527-GW-3<br><br>MOTION TO DISMISS FOR OUTRAGEOUS GOVERNMENT CONDUCT<br><br>Trial Date: October 29, 2024<br>Hearing Date: August 29, 2024<br>Hearing Time: 8:00 am<br>Courtroom: 9D |

Defendant, Jesus Esteban Felix, Jr., hereby moves this Court to dismiss the Indictment for outrageous government conduct. This motion is filed pursuant to Fed. R. Crim. P. 12(b)(3)(A) and is based upon the attached Memorandum of Points and Authorities, the files in this action, and upon such evidence as presented on the hearing on this motion. Mr. Felix requests an evidentiary hearing and at which he seeks to call the informant and his handler – retired San Luis Obispo County Deputy Sheriff Nicholas Fontecchio.

Dated: July 30, 2024

Respectfully Submitted,

/s/ *Richard W. Raynor*
RICHARD W. RAYNOR
Attorney for Defendant
JESUS ESTEBAN FELIX, JR.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. FACTS:

Jesus Esteban Felix, Jr. ("Felix, Jr.") is charged in the Indictment with violation of the drug kingpin statute and other drug related charges.[1] Felix, Jr. was born in California to two Mexican national parents who lived in the United States. His father, Jesus Esteban Felix-Leon, was convicted of drug trafficking and was sent to prison. While in prison custody Felix-Leon met the informant. Upon his release from Prison, Felix-Leon was removed to Mexico. Then at age 14, Felix Jr. was sent by his father to Mexico, where Felix Jr. continued his schooling.

The informant had been working for the San Luis Obispo County Sheriff's Department since 2001, under the supervision of now retired detective Nicholas Fontecchio.[2]

The essence of the enterprise alleged as the "Continuing Criminal Enterprise" and the

---

[1] The charges in Indictment against Jesus Esteban Felix, Jr. include:

Count One: 21 U.S.C. § 846, conspiracy with intent to distribute and to distribute cocaine;

Count Two: 21 U.S.C. § 848, continuing criminal enterprise;

Count Four: 21 U.S.C. § 841, possession with intent to distribute cocaine;

Count Fifteen: 21 U.S.C. § 843, use of a communication facility in committing a felony drug offense.

[2] See declaration of DEA Special Agent Rachel Burkdoll dated July 13, 2010 in support of initial Title III application, case number 2:10-cm-00205-UA, Document 5 (p. 28-29) and 5-1, in which she states: "CS#1 is a SLOSD confidential source who had been providing information to SLOSD Det. Fontecchio for about eight years. In January of 2009, CS#1 contacted Det. Fontecchio regarding information about large-scale narcotic traffickers that were in Mexico and distributing drugs in the United States.

agreement alleged as conspiracy is the joining of Canadian drug traffickers based in Puerta Vallarta, Mexico (who distribute to three different drug distributors) and Mexican sources of supply of cocaine based in Sinaloa. The government alleges that initially the Canadian distributors were Gordon Kendall and Jeffrey Ivars, and that after the two were killed in Mexico, lead defendant John Krokos took over as the connection to the three Canadian customers.

Felix, Jr. seeks to establish that the alleged enterprise/conspiracy involving a connection between Canadian distributors and Mexican suppliers, if it existed, was orchestrated and set up by the informant while he was an active informant for the San Luis Obispo County Sheriff's Department. The informant set up the Canadian/Mexican connection that is the core of this indictment in exchange for personal benefits: 1) reduced time in prison, 2) cash, and 3) to avoid deportation and to remain in the United States despite a conviction for lewd conduct with a child. The informant accomplished this by suggesting to his prison friend, Jesus Esteban Felix-Leon that the two partner up to connect Sinaloa cocaine sources of supply with Canadian cocaine distributors. The informant further accomplished this by introducing Canadians Kendall and Ivers (as drug traffickers seeking a supplier of cocaine) to Jesus Esteban Felix-Leon.[3] Furthermore, the informant facilitated communication between Mr. Felix-Leon and the Canadians by serving as and a translator and conduit for Felix-Leon in his communications with the Canadians. After the death of Kendall and Ivers, the informant introduced defendant Krokos to Felix-Leon to take over for Kendall and Ivers

[3] The informant stated in his affidavit in support of the request for extradition of Felix, Jr. that the informant made these introductions of Felix-Leon to Kendall and Ivans, and later to defendant Krokos.

as the contact for the Canadian traffickers.[4]

Thus, the offenses alleged are the creation of a highly motivated informant, supervised by a member of the law enforcement team – San Luis Obispo County Sheriff Det. Nicholas Fontecchio. Det. Fontecchio worked closely with DEA Special Agent Rachel Burkdoll on this case and on at least one prior case.[5]

Mr. Felix Jr. contends that the informant and his handler were the genesis for the crime that the government seeks to prosecute here. The government's pleadings suggest that the informant was merely joining a pre-existing criminal structure set up by Mr.Felix-Leon. But Mr. Felix Jr. seeks to establish through an evidentiary hearing that instead it was the informant that promoted and orchestrated this crime.

For these reasons, the government conduct was outrageous. A trial of Mr. Felix Jr. under the circumstances of this investigation are fundamentally unfair and would deprive him of the Fifth Amendment right to due process. For these reasons, the Court should dismiss the indictment with prejudice.

## II. ARGUMENT:

### A. AN INDICTMENT SHOULD BE DISMISSED FOR OUTRAGEOUS GOVERNMENT CONDUCT WHERE THE DEFENDANT'S INVOLVEMENT IN THE CRIME WAS ENGINEERED AND DIRECTED BY GOVERNMENT AGENTS

"Outrageous government conduct is not a defense, but rather a claim that government conduct in securing an indictment was so shocking to due process values that the indictment must be dismissed." *United States v. Montoya*, 45 F.3d 1286, 1300 (9th Cir.1995).

[4] As documented in a report of a January 2013 statement of a source of information. Bates KROKOS_35178.

[5] *United States v. Charles Lynch*, 2:07-cr-00689-GW.

"The defense of outrageous government conduct is limited to extreme cases in which the government's conduct violates fundamental fairness and is shocking to the universal sense of justice mandated by the Due Process Clause of the Fifth Amendment. This standard is met when the government engineers and directs a criminal enterprise from start to finish." *United States v. Gurolla*, 333 F.3d 944, 950 (9th Cir. 2003) (internal citations and quotations omitted).

It is outrageous for the government to generate new crimes "merely for the sake of pressing criminal charges." *United States v. Emmert*, 829 F.2d 805, 812 (9th Cir. 1987).

The informant here was motivated to reduce his charges, to earn money, and to avoid deportation to Mexico. It was the responsibility of the agents and Task Force Officers to assure that the informant's desire to deliver a case did not involve actively generating crime.

Because the conduct of the government was directed an ensnaring Mr. Felix-Leon, who was coming off of a prison sentence for drug trafficking, and not then already engaged in criminal activity, the government conduct is of the type that "shocks the conscience" requiring the Indictment to be dismissed for a violation of due process.

Even if the government conduct does not rise to the level of a due process violation, the court has the power to dismiss the indictment under its supervisory powers. *United States v. Stinson*, 647 F.3d 1196, 1210 (9th Cir. 2011), citing to, *United States v. Barrera–Moreno*, 951 F.2d 1089, 1091 (9th Cir.1991). "Such a power may be exercised 'to remedy a constitutional or statutory violation; to protect judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; or to deter future illegal conduct.'" *Stinson*, 647 F.3d at 1210; quoting from *Barrera–Moreno*, 951 F.2d at 1091. "The power [to

dismiss for outrageous government conduct] is not strictly limited to those uses." *Stinson*, 647 F.3d at 1210, citing to, *United States v. W.R. Grace*, 526 F.3d 499, 511 n. 9 (9th Cir.2008) (en banc). Thus, the Court has broad power to protect the integrity of the judicial process by dismissal of a case in which the institution of proceedings was fundamentally unfair.

B. WHERE THE GOVERNMENT, THROUGH THE ACTIONS OF ITS INFORMANT, BECOMES SO CLOSELY INVOLVED IN GENERATING CRIMINAL ACTIVITY, PROSECUTION OF THAT ACTIVITY MAY VIOLATE DUE PROCESS

In *United States v. Greene*, 454 F.2d 783 (9th Cir. 1971), the Ninth Circuit reversed a conviction of a defendant convicted of selling distilled spirits without tax stamps finding that "when the Government permits itself to become enmeshed in criminal activity, from beginning to end" as was done there, due process required reversal. In *Greene*, an undercover agent assumed the role of a member of a crime syndicate. The undercover approached the defendants who had previously been involved, but not currently, in manufacturing alcohol for sale without the tax stamp. In *Greene*, the agent approached the defendants, encouraged them to re-activate their operation, and agreed to become their exclusive customer. The court looked at five factors present there: 1) that the undercover approached the defendants when there was no pending reason to do so, 2) the activities occurred over an extended period of time, 3) the undercover was almost like a partner, 4) the undercover pressured the defendants to participate, 5) the government sought to re-establish the defendants in a criminal operation that was not already operating, and 6) the government was the only customer. *Id* at 786 – 787.

Mr. Felix-Leon was vulnerable in determining the path to take upon release from

prison.

The government presented this case to the grand jury as though Mr. Felix-Leon, upon release from prison, was already involving himself in drug distribution before the government's informant came along. But the timeline of events suggests otherwise. The informant was working with law enforcement for the eight years prior to the initiation of the investigation of this case in 2009. There was no information that Mr. Felix was already actively involved in distributing cocaine upon his release from prison, other than based upon the word of the informant. There is no evidence that Mr. Felix-Leon was involved in distributing drugs to anyone other than the three Canadians who were associated with each other.

Thus, the key fact at issue in Mr. Felix, Jr.'s claim is whether the informant introduced Mr. Felix-Leon to his sole customers.

## C. A CONSIDERATION OF THE SIX FACTORS IN *BLACK* FAVOR A FINDING OF OUTRAGEOUS GOVERNMENT CONDUCT

Although there is no bright line rule for dismissal for outrageous government conduct, and each case must be decided on its own facts, the Ninth Circuit, in *Untied States v. Black*, 733 F.3d 294 (9th Cir. 2013) has synthesized the cases on the subject to identify six important factors to evaluate the claims. The court in Black identified the factors as follows:

"(1) known criminal characteristics of the defendants;

(2) individualized suspicion of the defendants;

(3) the government's role in creating the crime of conviction;

(4) the government's encouragement of the defendants to commit the offense conduct;

(5) the nature of the government's participation in the offense conduct; and

(6) the nature of the crime being pursued and necessity for the actions taken in light of the nature of the criminal enterprise at issue."

*Id* at 303.

1. Known criminal characteristics of Mr. Felix

This factor involves "whether a defendant had a criminal background or propensity the government knew about when it initiated its sting operation." *Id* at 304. The government knew that Mr. Felix-Leon had been convicted of distribution of drugs. But he had been sent to prison for that offense. No one other than the informant claims to have observed Mr. Felix-Leon involved in the drug trade after his release from prison prior to being visited by the informant.

2. Individualized Suspicion

This factor involves "[w]hether the government had reason to suspect an individual or identifiable group before initiating a sting operation…." *Id*. When the investigation started, there was no evidence other than the word of the informant that Mr. Felix was already involved in drug sales. There was no law enforcement observation of Mr. Felix already being involved. This factor favors a finding of outrageous government conduct.

3. Government's Role in Creating the Crime of Conviction

"Also relevant is whether the government approached the defendant initially or the defendant approached a government agent, and whether the government proposed the criminal enterprise or merely attached itself to one that was already established and ongoing." *Id* at 305. Here, the informant sought out Mr. Felix-Leon. Here, the informant was highly

motivated to generate a case against Mr. Felix-Leon. This factor favors a finding of outrageous government conduct.

4. Government's Encouragement to Commit the Offense

"The extent to which the government encouraged a defendant to participate in the charged conduct is important, with mere encouragement being of lesser concern than pressure or coercion." *Id* at 308. Here, the informant not only encouraged the offense, he actively sought to facilitate the offense charged. Therefore, this factor favors a finding of outrageous government conduct.

5. Nature of the Government's Participation in the Offense Conduct

"The duration of the government's participation in a criminal enterprise is significant, with participation of longer duration being of greater concern than intermittent or short-term government involvement." *Id.* Also significant is "the nature of the government's participation—whether the government acted as a partner in the criminal activity, or more as an observer of the defendant's criminal conduct—including any particularly offensive conduct taken by the government during the course of the operation." *Id.* Here, the informant exploited his prison friendship with Mr. Felix-Leon. The informant located the Canadian contacts, and set up the introduction meetings to set up a criminal relationship. The informant was not a passive observer, but was instead the one to actively promote, pursue, and participant in the transactions. This factor strongly favors a finding of outrageous government conduct.

6. Nature of the Crime and Necessity for Actions Taken

The last factor is "the need for the investigative technique that was used in light of the challenges of investigating and prosecuting the type of crime being investigated." *Id* at 309. The fact that the government can induce a person into participating in a crime is not a reason to "create crime." There was no evidence that Mr. Felix was involved in distribution of drugs following his prison sentence before approached by the informant.

The Court in *Black* noted that weighing heavily in favor of upholding the conviction was the fact that everything that was said was audio and video recorded and did not depend on the credibility of government witnesses. *Id* at 310. However, here the interactions and conduct leading up to the alleged transactions were not recorded, and thus depends on the credibility of witnesses. Therefore, this factor favors a finding of outrageous government conduct.

On the facts of this case, and considering all of the factors, the conduct of the government in this investigation was outrageous.

III. CONCLUSION:

Based upon the foregoing, defendant, Jesus Esteban Felix, respectfully requests that this Court dismiss the Indictment because it was obtained by outrageous government conduct in violation of due process. Alternatively, because the methods used by the government are shocking and unfair, this court should use its supervisory powers to dismiss the indictment.

RESPECTFULLY SUBMITTED: July 30, 2024.

/s/ *Richard W. Raynor*
RICHARD W. RAYNOR
Attorney for Defendant
JESUS ESTEBAN FELIX, JR.