Richard W. Raynor (SBN 162289)
LAW OFFICE OF RICHARD W. RAYNOR
409 N.. Pacific Coast Highway, Suite 280
Redondo Beach, California 90277
Tel.: (424)257-0284
Fax: (424)258-9462
e-mail: richard@richardraynor.com
Attorney for Defendant
Jesus Esteban Felix, Jr.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America,<br>Plaintiff,<br>vs.<br>Jesus Esteban Felix, Jr.,<br>Defendant. | Case No. 2:12-cr-00527-GW-3<br><br>NOTICE OF MOTION AND MOTION TO DISMISS COUNT TWO OF THE INDICTMENT FOR FAILURE TO STATE AN OFFENSE AND FOR DEFECTS IN THE INSTITUTION OF THE PROCEEDINGS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF<br><br>Trial Date: October 29, 2024<br>Hearing Date: August 29, 2024<br>Hearing Time: 8:00 am<br>Courtroom: 9D |

Defendant, Jesus Esteban Felix, Jr., through counsel, hereby moves for an order to dismiss Count 2, which charges Mr. Felix with engaging in a Continuing Criminal Enterprise in violation of 21 U.S.C. § 848. This motion is based on Rule 12(b)(2) and 12(b)(3) of the Federal Rules of Criminal Procedure, the 5th and 6th Amendments to the United States Constitution, the files and records in this case, the attached

Memorandum of Points and Authorities, and any additional argument and evidence that may be presented at or before the hearing on this motion.

Dated: July 30, 2024

Respectfully Submitted,

/s/ Richard W. Raynor
RICHARD W. RAYNOR
Attorney for Defendant
JESUS ESTEBAN FELIX, JR.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION:

Jesus Esteban Felix, Jr. ("Felix, Jr.") is charged in Count 2 of the Indictment with violation of 21 U.S.C. § 848, Continuing Criminal Enterprise ("CCE") also known as the "drug kingpin" statute, and with other drug related charges. Felix Jr. was between 16/17 years old to age 19 during the period covered by the Indictment.

"To be guilty of engaging in a continuing criminal enterprise a person must be shown to have engaged in a 'continuing series of violations' of federal narcotics law, which continuing series of violations were undertaken 'in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management, and from which [series of violations] such person obtains substantial income or resources.'" *United States v. Jerome*, 942 F.2d 1328, 1330 (9th Cir. 1991), *quoting* 21 U.S.C. § 848(c).

The Supreme Court said that the language of the Continuing Criminal Enterprise offense "reveals a carefully crafted prohibition aimed at a special problem." *Garrett v. United States*, 471 U.S. 773, 781 (1985) The Supreme Court continued, "[t]his language is designed to reach the 'top brass' in the drug rings, not the lieutenants and foot soldiers." *Id*. "[T]he object of the Continuing Criminal Enterprise statute or 'Kingpin' statute is specifically aimed at upper level crime figures who occupy a position of control in the narcotics netherworld." *United States v. Sanito*, 723 F.2d

1250, 1262 (6th Cir. 1984). The congressional record shows the intent of Congress to provide special punishment for special offenders: professional criminals who organize and direct a "continuing" drug distribution enterprise.[1]

To qualify as an "organizer" under this statute, the defendant "must exercise some sort of managerial responsibility" over the supervisees. *Jerome*, 942 F.2d at 1331. And not every relationship within a drug conspiracy amounts to such management responsibility. For example, the relationship of a drug re-seller cannot be said to have management responsibility over his supplier. *Id*. "To be an organizer within the sense of the statute more is required than simply being a steady customer." *Id*. In *Jerome*, the Ninth Circuit reversed a CCE conviction on plain error review because, when suppliers were eliminated from the count, there were not five persons who could be supervisees. *Id*.

In *United States v. Delgado*, 4 F.3d 780 (9th Cir. 1993), the Ninth Circuit extended the holding in *Jerome* to find that merely because another party is a drug customer, does not make the person a supervisee.

<u>Failure to State an Offense</u>

Pursuant to an August 24, 2010 search warrant for the phones of Felix-Leon and Krokos, DEA SA Burkdoll discovered that neither was able to communicate with the other because at the time neither had a translator available to them.. See 2:10-cm-

[1] 116 Cong. Rec. 995 (1970) (remarks of Sen. Dodd); 116 Cong. Rec. at 1181 (remarks of Sen. Thurmond); 116 Cong. Rec. at 33631 (remarks of Cong. Weicker). Representative Fascell remarked: "I see no reason to treat a drug trafficker any less harshly than an organized crime racketeer. Their acts are equally heinous, the consequences equally severe, and the punishment equally justified." 116 Cong. Rec. at 33634 (1970).

00205, Document 33, p. 92.

DEA Special Agent Rachel Burkdoll testified before the grand jury about how at first the informant played the role of conduit-interpreter, and later that role fell to Mr. Felix, Jr.:

Q. I just want to take a step back. The CS informed you that when Krokos first started purchasing cocaine from Felix, the CS would serve as a translator or go-between relaying messages back and forth; is that correct?

A. Yes.

Q. But at a certain point, the CS stopped working with Felix; is that correct?

A. Yes.

Q. And in the investigation is it true that interceptions showed Alvarez communicating primarily with Krokos and not Felix directly?

A. Yes.

Q. And based on your investigation, why is that?

A. Well, Alvarez was bilingual, so he would speak English and Spanish. And also he was typically easier to reach on his BlackBerry device. So

Krokos would normally talk to three primary people which would be Alvarez, Ichiro, and a guy that we later identified as Carlos Javier Verdugo-Miranda.

Q. Okay.

A. And when Krokos needed to speak with Felix-Leon, he would send messages to Felix-Alvarez to translate for them because they both lived in Mexico.

Q. And how would you know that Krokos would—When he would send those messages, would want those messages to be relayed to Felix?

A. He would typically include in the e-mail, like, "Can you ask M," which was the nickname for Felix-Leon, "Can you ask M about this"or "Find out about something else for me. And then sometimes we'd see messages from Alvarez where he would say "The Lord of the Beaches asks you this. "The Lord of the Beaches" was a nickname that they used to describe Krokos.

This grand jury testimony by the case agent establishes that, at most, Mr. Felix Jr. was a trusted translator and conduit of messages for his father.

So even if the Indictment was clear of defects, the available evidence is insufficient to establish that Mr. Felix, Jr. was even a lieutenant (which the Supreme Court has held is an insufficient leadership role to be convicted of Continuing Criminal Enterprise). The government has indicated that no witnesses are expected to testify as to interactions with Mr. Felix Jr., and that the available evidence of his communications are the currently existing email messages of the parties.

With the above referenced legal limitations on the scope of Continuing Criminal Enterprise liability, and the state of the evidence, the allegations in Count Two is legally insufficient.

But there are more reasons why Count Two is defective. Count Two is drafted in a way that does not specify what is the enterprise, and who are the persons supervised. The language of Count Two allows for there to be one combined "enterprise" which includes both the source of supply and the buyer (or buyer's broker). The alleged enterprise, under the facts here, are more fairly interpreted as a source of supply broker (what the government calls the Felix-Leon DTO) and the drug customer broker (what the government calls the Krokos DTO.

Whether this is one enterprise or two involves looking at the roles of the defendants included in the charge. Following *Delgado*, the fact that Krokos is a customer (or broker for a customer) does not turn Krokos or his workers into

"supervisees" within the meaning of the statute. *United States v. Delgado*, 4 F.3d 780 (9th Cir. 1993).

Furthermore, communications suggest that the Canadians were very picky about the drug quality, and they regularly rejected the drugs supplied as being of insufficient quality. The customers were not being managed by the suppliers. And Krokos had other sources of supply such that he and his crew were not connected to Felix-Leon. Even Felix-Leon was not a manager of Krokos' crew. Certainly, Felix Jr. had no such relationship of manager of Krokos and his people.

Count Two, by combining four defendants as acting as a block, and by not identifying separate enterprises, allowed for the finding of a true bill even though legally deficient.

<u>Defects in the Institution of the Proceedings</u>

Defects in the institution of the proceedings can be found by the government's presentation to the grand jury, referenced above. But the defects also involve leaving the grand jury with a misimpression about the evidence based on what was not presented to them.

## II. ARGUMENT

"Rule 12 creates three categories of defenses, objections, and requests that 'may' be raised before trial: (1) the failure of the indictment or information to show subject matter jurisdiction or to state an offense ('jurisdictional defenses'); (2) the five

matters enumerated in Rule 12(b) ('mandatory pretrial matters'), including defenses 'based on defects in the institution of the prosecution' and defenses 'based on defects in the indictment or information'; and (3) all other matters that are 'capable of determination without the trial of the general issue' ('permissive pretrial matters')." *United States v. Smith*, 866 F.2d 1092, 1095 (9th Cir. 1987).

Mr. Felix challenges the Indictment: 1) because it fails to state an offense, and 2) because of defects in the institution of the proceedings.

## I. COUNT TWO OF THE INDICTMENT SHOULD BE DISMISSED BECAUSE THE ALLEGATIONS FAIL TO STATE AN OFFENSE AGAINST JESUS ESTEBAN FELIX JR.

Rule 12(b)(3)(A)(v) provides that a defendant may raise by pre-trial motion the failure of an indictment to state an offense.

### 1. Legal Standard

The Court may dismiss any charge in an indictment which fails to state an offense. The sufficiency of an indictment is determined only on the face of the indictment. See *United States v. Lunstedt*, 997 F. 2d 665, 667 (9th Cir. 1993). "[A] charging document fails to state an offense if the specific facts alleged in the charging document fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation." *United States v. Hediathy*, 392 F.3d 580, 587 (3rd Cir. 2004), *cert den.* 544 U.S. 978 (2005).

An indictment will be found defective and dismissed if it fails to recite an essential element of the charged offence. *United States v. Gondinez-Rabadan*, 289 F.3d

630, 632 (9th Cir. 2002). "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." *Hamling v. United States*, 418 U.S. 87, 117, 94 (1974) (internal citations and quotation marks omitted). The Ninth Circuit has noted, however, that "implied, necessary elements, not present in the statutory language, must be included in an indictment." *United States v. Jackson*, 72 F.3d 1370, 1380 (9th Cir. 1995).

"An indictment's failure to 'recite an essential element of the charged offense is not a minor or technical flaw ... but a fatal flaw requiring dismissal of the indictment.'" *United States v. Pernillo-Fuentes*, 252 F.3d 1030, 1032 (9th Cir. 2001) (quoting *United States v. Du Bo*, 186 F.3d 1177, 1179 (9th Cir. 1999)).

"The failure of an indictment to detail each element of the charged offense generally constitutes a fatal defect." *United States v. Keith*, 605 F.2d 462, 464 (9th Cir. 1979).

If the CCE statute requires the Mr. Felix Jr. to personally satisfy each element of the offense to qualify as a "drug kingpin" rather than by aiding abetting a co-defendant committing the offense, then the allegations are deficient on their face. The law on whether a person can qualify for the severe punishment of a 20 year mandatory minimum as a "drug kingpin" by aiding and abetting another person is an unsettled question of law. See *United States v. Amen*, 831 F.2d 373, 381-82 (2nd Cir. 1987)

(Allowing "drug kingpin" liability to lower-level drug traffickers based upon aiding and abetting liablility is contrary to the legislative purpose of the statute,) See also, *United States v. Joyner*, 201 F.3d 61 (2nd Cir. 1998) The Ninth Circuit, in dicta, accepted the reasoning of the Second Circuit in *Amen*, but distinguished the application of that rule to aiding and abetting the offense of distribution in violation of 21 U.S.C. § 841. Cf. *United States v. Pino-Perez*, 870 F.2d 1230 (7th Cir. 1989)(Allowing a conviction for aiding and abetting liability a "drug kingpin.") In *United States v. Baker*, 10 F.3d 1374 (9th Cir. 1993), the Ninth Circuit acknowledge the circuit split, but declined to address the issue of whether liability can be premised on aiding and abetting, because there it was clear that liability was premised solely on the defendant being a principal, and not based upon an aiding and abetting theory. Mr. Felix Jr. contends that the better view, and the view best supported by the legislative history, is that this statute has a special purpose that seeks greatly enhanced punishment for the top leadership at large scale Drug Trafficking Organizations who have made substantial financial gain, and should not apply to those who aid and abet a "kingpin."

2. Failure to State an Offense

i. The Indictment Fails to Sufficiently Allege and Identify the Enterprise"

As discussed below, Count Two of the Indictment does not distinguish between two possible Drug Trafficking Organizations, and the true bill could have been premised on aiding and abetting liability.

. ii. Failure to Identify Five Legally Sufficient Supervisees

The Ninth Circuit interpreted the "statutory language 'or any other position of management' to indicate that an 'organizer' must exercise some sort of managerial responsibility; one does not qualify if one simply sets up a system of supply. *United States v. Jerome*, 942 F.2d 1328 (9th Cir. 1991). Count Two does not sufficiently allege five persons over whom Mr. Felix Jr. exercised managerial responsibilities.

iii. Failure to Allege Substantial Income or Resources

The way Count Two is worded, the grand jury could have found a true bill based upon substantial income and resources to co-defendants. However, if aiding and abetting liability does not apply, then the Indictment does not sufficiently allege this element.

II. COUNT TWO OF THE INDICTMENT SHOULD BE DISMISSED BECAUSE OF DEFECTS IN THE INSTITUTION OF THE PROCEEDINGS

Rule 12(b)(3)(A) requires that a motion alleging a "defect in instituting the prosecution" must be made before trial. "This category includes such defenses as prosecutorial misconduct, improper grand jury procedures, and noncompliance with the Federal Rules of Criminal Procedure." *United States v. Smith*, 866 F.2 1092, 1097

(9th Cir. 1987). Motions under this section "are designed principally as vehicles to challenge the decision to prosecute and prosecutorial irregularity in obtaining the indictment." *Id*.

A. Federal Rules of Criminal Procedure and Due Process

Here, the defects in the institution of the proceedings include the: 1) the presentation of an indictment in a form that fails to comply with the requirements of the Federal Rules of Criminal Procedure, 2) the presentation of the indictment in a form that violates due process and the presentment requirements guaranteed by the 5th Amendment to the Constitution, and 3) irregularities in obtaining the indictment.

The Federal Rules of Criminal Procedure set forth the requirements for an Indictment. The requirements help to ensure that the Indictment complies with the rights to due process and the right to have the independent judgment of the grand jury, guaranteed by the 5th Amendment to the Constitution. The First Superseding Indictment presented to the grand jury in this case contained vague, indefinite, and insufficient language so that the alleged conduct charged is not clear.

1. Legal Standard- Defects in Instituting the Prosecution under the Federal Rules of Criminal Procedure and the Fifth Amendment to the Constitution

Fed.R.Crim.P. 7(c)(1) requires that the indictment "be a plain, concise, and definite written statement of the essential facts constituting the offense charged."

> "An indictment . . . must meet the requirements of both the Due Process Clause and Federal Rule of Criminal Procedure 7. Under the Due Process Clause, an indictment... is sufficient if it first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend,

> and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense. Federal Rule of Criminal Procedure 7 requires that an indictment .be a plain, concise, and definite written statement of the essential facts constituting the offense charged. An indictment is sufficient if it contains the elements of the charged crime in adequate detail to inform the defendant of the charge and to enable him to plead double jeopardy."

*United States v. Zhou*, 678 F.3d 1110, 1113 (9th Cir. 2012) (quotation marks and citations omitted).

"An indictment is sufficient to withstand a motion to dismiss if it contains the elements of the charged offense in sufficient detail (1) to enable the defendant to prepare his defense; (2) to ensure him that he is being prosecuted on the basis of facts presented to the grand jury; (3) to enable him to plead double jeopardy; and (4) to inform the court of the alleged facts so that it can determine the sufficiency of the charge." *United States v. Bernhardt*, 840 F.2d 1441, 1445 (9th Cir. 1988).

"[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974). "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.'" *Id* quoting *United States v. Carll*, 105 U.S. 611, 612 (1882). "Undoubtedly the language of the statute may be used in the general

description of an offence, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged." *Hamling*, 418 U.S. at 117-118, quoting *United States v. Hess*, 124 U.S. 483 (1888).

In *United States v. Williams*, 504 U.S. 36, 46, (1992) the Supreme Court stated that "…the supervisory power can be used to dismiss an indictment because of misconduct before the grand jury, at least where that misconduct amounts to a violation of one of those 'few, clear rules which were carefully drafted and approved by this Court and by Congress to ensure the integrity of the grand jury's functions.'" *United States v. Williams*, 504 U.S. 36, 46, (1992), quoting from *United States v. Mechanic*, 475 U.S. 66, 74 (1996) (O'CONNOR, J., concurring in judgment). "In deciding whether to dismiss an indictment, a court must not only determine whether a defendant has suffered actual prejudice, it must also limit its consideration to those events that actually bear upon the grand jury's decision to indict." *United States v. Isgro*, 974 F.2d 1091, 1097 (9th Cir. 1992). Prejudice, in this context requires that the violations of the rules substantially influenced the decision to indict, "or if there is grave doubt that the decision to indict was free from such substantial influence." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 263 (1988).

2. Defects in Count Two of the Indictment under the Federal Rules of Criminal Procedure, and under the Constitution

The Indictment is alleges as a background for the "drug kingpin" charge that the wrongdoing here resulted in the coming together of Canadian cocaine traffickers with Mexican cocaine suppliers. But the government omitted key facts in its presentation to the grand jury. It failed to mention that the connection that is the basis of this prosecution was set up by the government's informant. The informant introduced Kendall and Ivars to Jesus Felix-Leon. And the informant then introduced Krokos to Jesus Felix-Leon

DEA Special Agent Burkdoll testified about obtaining from the informant information about the connection of Canadian drug traffickers and a Mexican source of supply for cocaine. But the fact that the informant was the one who put the two pieces together is omitted from the testimony. Agent Burkdoll's testimony on the subject was as follows:

Q. And based on those interviews, what did you learn from the confidential source?

A. The source told me that the organization was a Mexico/Canadian drug trafficking group. The cocaine was being supplied from several people in Mexico, and it was being delivered to the Los Angeles area, whereupon several members of a Canadian organization would then acquire that

cocaine from the members of the Mexican organization, and they would arrange for transportation in to Canada.

Q. And did the CS identify people who were later determined to be Krokos,Felix,and Alvarez,and by that mean John Darrell Krokos, Jesus Esteban Felix—Leon,and Jesus Felix-Alvarez?

A. Yes.

Q. And can you talk about how the CS identified those people and what the CS said about them?

A. So the CS had previously worked with Felix-Leon. They had met several years prior to this interaction in jail and they became acquaintances. The--he, the CS, knew that the— that Felix-Leon was involved in the trafficking of cocaine. During this time when the CS was involved with him, Felix-Leon used him to translate for him because Felix-Leon doesn't speak very good English. And so in order to deal with the Canadians, they needed translators to, you know, provide translation from Spanish to

English for some of the messages that were going back and forth, so that way they would know when shipments of cocaine were gonna arrive, and when money was gonna be delivered, and things of that nature.

Q. And did the CS identify Krokos as one of Felix's customers of cocaine?

A. Yes.

This testimony leaves the impression that Krokos was a pre-existing customer of Felix-Leon that was made known to the informant by Felix-Leon. But what the grand jury was not told was that the informant created the Candadian-Mexican connection that was basis for this prosecution.

In a 2022 declaration in support of Mr. Felix Jr's extradition, the informant stated:

"Following my release [from prison], I was again removed to Mexico and I moved to Puerta Vallarta. In 2009, I ***unexpectedly*** saw Felix-Leon."

It was then in 2009 in Mexico that the informant introduced Felix-Leon to o the Canadians drug traffickers whom the informant had met in Puerta Vallarta. This additional information is important because the grand jury was left the false impression that the informant joined, as a co-conspirator, a then-existing drug connection between

Felix-Leon and the Canadians. Instead, he was acting as an informant who was not legally capable of being a co-conspirator to drug conspiracy. Drug conspiracy is a lesser included offense to Continuing Criminal Enterprise. *United States v. Medina*, 940 F.2d 1247 (9th Cir. 1991). The informant, seeking benefits from law enforcement and U.S. immigration authorities, was the genesis of the Canadian-Mexican connection that is focus of the Indictment in this case. The information omitted was highly pertinent to determining whether there was sufficient evidence to establish a "continuing criminal enterprise."

The grand jury was further not told that Felix-Leon stopped his alleged transactions with the Canadians or other customers after May 2011 up to the time of the indictment, and at that point, the transactions with them were no longer "continuing"

B. Defects in the Institution of the Proceedings that the Court Can review under its Supervisory Powers to Protect the Integrity of the Judicial Process

"In recent years, the Ninth Circuit has affirmed its willingness to utilize its supervisory powers to review the dismissal of an indictment by a trial court when necessary 'to protect the integrity of the judicial process.'" *United States v. Gonsalves*, 691 F.2d 1310, 1316 (9th Cir. 1982), citing to *United States v. Chanen*, 549

F.2d 1306, 1309 (9th Cir.), cert. denied, 434 U.S. 825 (1977), quoting *United States v. Leibowitz*, 420 F.2d 39, 42 (2d Cir. 1969).

1. Legal Standard

"A motion alleging a defect in instituting the prosecution" must be raised pre-trial. Fed. R. Crim. P. Rule 12(b)(3)(a).

"[A] trial court may have legal discretion to dismiss an indictment 'to do justice,' even in the absence of express statutory authority." *United States v. Gonsalves*, 691 F.2d 1310, 1316, (9th Cir. 1982), citing to *United States v. Apex Distributing Co.*, 270 F.2d 747, 756 (9th Cir. 1959).

The government has a great discretion in presenting evidence to the grand jury, and is not even required to present exculpatory evidence to the grand jury. *United States v. Williams*, 504 U.S. 36 (1992). "But this prosecutorial discretion is not boundless." *United States v. Al Mudarris*, 695 F.2d 1182, 1185 (9th Cir.), cert. denied, 461 U.S. 932 (1983). "The prosecutor may not circumvent the constitutional safeguard of a grand jury by overreaching conduct that impinges on the grand jury's autonomy and interferes with its exercise of unbiased judgment." *United States v. De Rosa*, 783 F.2d 1401 (9th Cir. 1986), citing to *United States v. Al Mudarris*, 695 F.2d 1182, 1185 (9th Cir.), cert. denied, 461 U.S. 932, 103 S.Ct. 2097, 77 L.Ed.2d 305 (1983).

"[A]n indictment based on hearsay is invalid where (1) non-hearsay evidence is readily available; (2) the grand jury is misled into believing it was hearing direct

testimony rather than hearsay; and (3) there is high probability that had the grand jury heard the eye witnesses it would not have indicted." *United States v. Cruz*, 478 F.2d 408, 410 (5th Cir.), cert. denied, 414 U.S. 910, 94 S.Ct. 259, 38 L.Ed.2d 148 (1973) (citations omitted).

"Although deliberate introduction of perjured testimony is perhaps the most flagrant example of misconduct, other prosecutorial behavior, even if unintentional, can also cause improper influence and usurpation of the grand jury's role." *United States v. Samango*, 607 F.2d 877, 882 (9th Cir. 1979). The responsibilities of the grand jury include "both the determination whether there is probable cause to believe a crime has been committed and the protection of citizens against unfounded criminal prosecutions." *Id* (internal citations omitted). "If the grand jury is to accomplish either of its functions independent determination of probable cause that a crime has been committed and protection of citizens against unfounded prosecutions, limits must be set on the manipulation of grand juries by over-zealous prosecutors." *Id*. ". . . The right to have the grand jury make the charge on its own judgment is a substantial right which cannot be taken away…." *Stirone v. United States*, 361 U.S. 212, 218-19 (1960).

The Court's inherent authority to dismiss an indictment also has limitations. In *United States v. Chanen*, 549 F.2d 1306, 1313 (9th Cir. 1977) the Ninth Circuit cautioned that "given the constitutionally-based independence of each of the three actors court, prosecutor and grand jury we believe a court may not exercise its

'supervisory power, in a way which encroaches on the prerogatives of the other two unless there is a clear basis in fact and law for doing so."

The Court can also use these supervisory powers as a basis to dismiss the indictment.

CONCLUSION:

Based upon the foregoing, defendant, Jesus Esteban Felix Jr., respectfully requests that this Court dismiss Count Two of the Indictment.

Dated: July 30, 2024

Respectfully Submitted,

/S/ Richard W. Raynor
RICHARD W. RAYNOR
Attorney for Defendant
JESUS ESTEBAN FELIX, JR.