Richard W. Raynor (SBN 162289)
LAW OFFICE OF RICHARD W. RAYNOR
407 N. Pacific Coast Highway, Suite 280
Redondo Beach, California 90277
Tel.: (424)257-0284
Fax: (424)258-9462
e-mail: richard@richardraynor.com
Attorney for Defendant
Jesus Esteban Felix Jr.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>    vs.<br><br>Jesus Esteban Felix Jr. ,<br><br>    Defendant. | Case No. 2:12-cr-00527-GW-3<br><br>DEFENDANT'S MOTION TO DISMISS COUNT TWO OF THE INDICTMENT BECAUSE EXTRADITION ON THAT CHARGE WAS OBTAINED THROUGH THE PRESENTATION OF FALSE AND FRAUDULENT EVIDENCE ; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; AND EXHIBITS<br><br>Trial Date:    August 12, , 2025<br>Hearing Date: June 23, 2025<br>Hearing Time: 8:00 am<br>Courtroom:    9D |

Defendant, Jesus Esteban Felix Jr., through counsel, hereby moves to dismiss count 2 of the Indictment which charges him with violation of 21 U.S.C. § 848 (Continuing Criminal Enterprise – "The Kingpin Statute") because his extradition from Mexico on that charge was procured by the presentation of false and fraudulent

MOTION TO DISMISS FOR FRAUD IN THE EXTRADITION PROCEEDINGS

evidence, all in violation of due process U.S. Const. amend. V, in violation of the applicable extradition treaty, and without the attachment of personal jurisdiction on that charge. Defendant's motion is based on the attached Memorandum of Points and Authorities; the attached exhibits, the files and records in this action, and such further evidence and argument as the Court may permit at a hearing on this matter.

Dated: April 21, 2025                    Respectfully Submitted,

                         /s/    *Richard W. Raynor*
                         RICHARD W. RAYNOR
                         Attorney for Defendant
                         JESUS ESTEBAN FELIX JR.

## MEMORANDUM OF POINTS AND AUTHORITIES

I.    **INTRODUCTION:**

In 2012, Jesus Esteban Felix Jr. ("Felix Jr.") was indicted on charges of violation of Continuing Criminal Enterprise  (18 U.S.C. § 848), also known as the drug kingpin statute, and other drug related charges.

Ten years later, in 2022, the government presented an extradition request to Mexico requesting that Mr. Felix Jr be turned over to United States government for his prosecution on the indictment.  In support of the of the government's extradition request, it attached affidavits in support of extradition by AUSA Timothy Searight (Exhibit A), and by DEA agent Gabriel Perez (Exhibit B), and a declaration by informant CS-1 (Exhibit C).

All three declarations contained material false statements.

1.    Timothy Searight, AUSA

The declaration of AUSA Timothy Searight, in paragraph 24, states in in part:

"The investigation identified FELIX-ALVAREZ, Felix-Leon's son, as one of the organization's U.S.-based leaders and organizers responsible for directing, managing, and overseeing the organization's drug trafficking activities, including sales and shipment of cocaine to Krokos and to Krokos's associates."

Without addressing the truth of the other facts alleged, that statement is false in that Felix Jr. was not U.S.-based.  During the times alleged in the indictment Mr. Felix Jr. lived and attended school in Mexico.  The government makes it out as though Mr. Felix Jr. committed crimes in the United States and then fled to Mexico.  Mr. Felix Jr.

moved to Mexico at age 14 at the request of his father who was then living in Mexico. Mr. Felix Jr. visited family in the United States on occasion. The only allegation that Mr. Felix Jr. was committing crimes while physically present in the United States are the uncorroborated false claims of the informant.

> 2.      Gabriel Perez, DEA Agent

The declaration of DEA agent Gabriel Perez, in paragraph 9, states in part:

> "During the investigation, [informant CS-1], one of FELIX-ALVAREZ's associates, admitted to law enforcement authorities that he worked with FELIX-ALVAREZ to distribute hundreds of kilograms of cocaine in Los Angeles, California, and other cities throughout the United States."

This claim was known to the government to be false in several respects. First of all, the informant was never a criminal associate of Felix Jr. The informant's role after his release from prison in 2008 was that of informant. An informant is by definition not an associate or co-conspirator with the targets. More importantly, the informant never communicated or worked with Felix Jr. to distribute drugs. And in opposing defendant's motion to dismiss for outrageous government conduct, the government argued that the informant's role in this investigation did not continue "after the initial passing of a law enforcement telephone number to Krokos." Document 1073, p. 10 of 22.

////

////

////

3.      Informant, CS-1

The declaration of CS-1, in paragraph 8, states:

"After introducing Krokos to Felix-Leon, Krokos purchased approximately 40-60 kilograms of cocaine from Felix-Leon and FELIX-ALVAREZ approximately every two to three weeks.  I assisted Krokos in purchasing cocaine from them.  Specifically, when Krokos wanted to purchase cocaine from them, he contacted me via the BlackBerry device that he provided me, and in turn I contacted Felix-Leon and FELIX-ALVAREZ to set up the cocaine transactions.  Through this arrangement, Felix-Leon and FELIX-ALVAREZ distributed hundreds of kilograms of cocaine in Los Angeles, California, and other cities thoughout the United States.  Additionally, on one occasion, based on Felix-Leon's instructions, FELIX-ALVAREZ and I picked up what I understood to be a large quantity of drug proceeds (in United States currency) in Mexico and delivered those funds to Felix-Leon.

Yet, the government has persistently claimed that after the informant introduced Krokos to Felix-Leon and provided a phone number to Krokos for the undercover officer as a source of Electronic Blackberry devices, that CS-1 was no longer involved in this investigation.  These allegations by CS-1 appear nowhere in the discovery from the government except in the attached declarations.  The government therefore must have believed these statements to be false when presented to the Mexican government to request Mr. Felix Jr.'s extradition.

AUSA Searight vouched for CS-1's allegations, stating "I have attached to this affidavit…the declaration of [CS-1], in which he describes **his first hand knowledge** of FELIX-ALVAREZ's criminal activities.

Together, these false statements suggested to the Mexican government that the United States government had direct evidence of actual observations by CS-1 that Mr.

Felix was the U.S.-based leader of a drug organization regularly handling 40-60 kilograms of cocaine every two to three weeks.  This information falsely suggests that the informant was an a co-conspirator turned cooperator, when in fact he was all along working as an informant seeking immigration benefits from the government.

These false statements in the affidavits and declaration strongly, but fraudulently, suggested that Mr. Felix Jr. was guilty of violation of the "Kingpin statute."

The case against Mr. Felix Jr. for violation of the "Kingpn statute" was grossly misrepresented during the extradition proceedings such that the process was fundamentally unfair.  Except for the last transaction(s) alleged involving Felix Jr's uncle Ortega, Felix Jr. was a minor (under 18) at the time of the overt acts.  In her testimony before the grand jury, S.A. Burkdoll testified that after CS-1 made introductions of Krokos to Felix-Leon, that CS-1 continued on as a role of translator so Felix-Leon could communicate with Krokos who did not speak Spanish proficiently. (Bates KROKOS_038273).  S.A. Burkdoll testified that after CS-1 ceased his role as translator, that Felix Jr. took over that role, stating: "And when Krokos needed to speak with Felix-Leon, he would send messages to Felix-Alvarez to translate for them because they both lived in Mexico." *Id*.

"To be guilty of engaging in a continuing criminal enterprise a person must be shown to have engaged in a 'continuing series of violations' of federal narcotics law, which continuing series of violations were undertaken 'in concert with five or more

other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management, and from which [series of violations] such person obtains substantial income or resources.'" *United States v. Jerome*, 942 F.2d 1328, 1330 (9th Cir. 1991), quoting 21 U.S.C. § 848(c).

The Supreme Court said that the language of the Continuing Criminal Enterprise offense "reveals a carefully crafted prohibition aimed at a special problem." *Garrett v. United States*, 471 U.S. 773, 781 (1985) The Supreme Court continued, "[t]his language is designed to reach the 'top brass' in the drug rings, not the lieutenants and foot soldiers." *Id*.

Mr. Felix Jr's alleged conduct does not meet this definition. Mexico likely extradited Mr. Felix Jr. only because facts were misrepresented in the extradition application.

## III.  LEGAL ARGUMENT

A. Rights Guaranteed by the United States –Mexico Extradition Treaty

Jesus Esteban Felix Jr. was extradited by the government from the United Mexican States. The extradition is governed by treaty. Mexico International Extradition Treaty with the United States, 31 U.S.T. 5059 (the "Treaty").

1. The Doctrine of Specialty

Article 17 (Rule of Specialty) of the United States – Mexico Extradition Treaty states:

MOTION TO DISMISS FOR FRAUD IN THE EXTRADITION PROCEEDINGS

"A person extradited under the present Treaty shall not be detained, tried or punished in the territory of the requesting Party for an offense other than that for which extradition has been granted"

"The doctrine of 'specialty' prohibits the requesting nation from prosecuting the extradited individual for any offense other than that for which the surrendering state agreed to extradite.'" *United States v. Van Cauwenberghe*, 827 F.2d 424, 428 (9th Cir.1987), cert. denied, 484 U.S. 1042 (1988).

An extradited person may raise whatever objections the extraditing country is entitled to raise. *United States v. Cuevas*, 847 F.2d 1417, 1426 (9th Cir.1988), cert. denied, 489 U.S. 1012 (1989). Because the government sought Mr. Felix Jr.'s presence through the extradition process, Mr. Felix Jr. has standing to enforce the treaty obligations.

"The doctrine of specialty has been interpreted as requiring that 'the prosecution be based on the same facts as those set forth in the request for extradition.'" *United States. v. Andonian*, 29 F.3d 1432 (9th Cir. 1994), quoting from *United States v. Sensi*, 879 F.2d 888, 895-96 (D.C.Cir.1989).

In *United States. v. Andonian*, 29 F.3d 1432, 1438 (9th Cir. 1994), the Ninth Circuit addressed a challenge to a charge based on the allegation that false evidence was presented in support of extradition on that charge. The Ninth Circuit decided the challenge as a factual matter, finding that declaration by a cooperating informant in support of extradition was not shown to be false.

MOTION TO DISMISS FOR FRAUD IN THE EXTRADITION PROCEEDINGS

Here, the government presented affidavits and declarations that it knew to be false as discussed above. The extradition process was so compromised such that the ability of the Mexican government to make a fair determination of the existence of probable cause to believe that that Mr. Felix Jr was guilty of the offense of "Continuing Criminal Enterprise" was undermined. Therefore, based on the doctrine of Specialty, which is set forth in the Treaty, the Court should dismiss Count Two of the Indictment which charges Mr. Felix Jr. with the offense of "Continuing Criminal Enterprise."

In *United States v. Fowlie*, 24 F.3d 1059 (9th Cir. 1994) the Ninth Circuit denied a specialty challenge to jurisdiction involving non-possessory drug crimes, which included drug conspiracy in violation of 21 U.S.C. § 846, and the charge challenged here, 21 U.S.C. § 848. However, the comparison should be on a case by case basis looking at the reliably shown facts establishing defendant's conduct, and then comparing criminal liability for that alleged conduct under 21 U.S.C. § 848 and under Mexican law. Here, the remaining reliably presented facts will not be enough to establish proof of the offense of Continuing Criminal Enterprise. Therefore, Count two of the Indictment should be dismissed.

Under 21 U.S.C. § 848(b), the charged offense could potentially have a mandatory minimum of life imprisonment if the defendant is a principle leader and sufficient quantities of drugs are involved. The Indictment does not allege these factors that would raise the mandatory minimum, and the enhanced offense was not

MOTION TO DISMISS FOR FRAUD IN THE EXTRADITION PROCEEDINGS

presented to the Mexican government for approval.  Therefore, under the doctrine of specialty, even if the Court does not dismiss this offense, the Court should prohibit the enhanced sentence.

Further, because the government did not advise that Count 2 was subject to a 20 year mandatory minimum, the Court should find that based upon the doctrine of specialty, that the offense be dismissed, or find that the 20 year mandatory minimum may not be imposed.

### 2.    The Requirement of Dual Criminality

The doctrine of dual criminality in the Treaty also requires that for an offense to be extraditable, the alleged conduct must be considered a criminal offense under both the law of Mexico and the United States.  *United States v. Saccoccia,* 18 F.3d 795, 800 n. 6 (9th Cir.1994); *Caplan v. Vokes*, 649 F.2d 1336, 1343 (9th Cir. 1981).  The doctrine is incorporated into the Treaty at Article II, §§ 1, 3.

The "Kingpin Statute" has no analogy under Mexican law.  Under 21 U.S.C. § 848, the mandatory minimum sentence is at least 20 years, and the maximum is life. Instead, under Mexican law, major drug trafficking is punishable for up to 25 years.

### B.    Lack of Personal Jurisdiction

To the extent that the Court finds either of the treaty restrictions on prosecution of Felix Jr. are applicable, the Court should find a lack of personal jurisdiction over Mr. Felix Jr. and should accordingly dismiss that Count two of the Indictment.

MOTION TO DISMISS FOR FRAUD IN THE EXTRADITION PROCEEDINGS

C.      The Fifth Amendment Right to Due Process and a Fair Hearing

Because as set for the above the government has undermined the integrity of the extradition process by presenting false statements under oath, Mr. Felix Jr. has been denied a fair hearing and due process.  U.S. Const. amend. V.  Therefore, the Court should dismiss Count two on due process grounds.

## III. CONCLUSION:

Based upon the foregoing, defendant, Jesus Esteban Felix Jr., respectfully requests that this Court dismiss Counts Two of the Indictment.

Dated: April 21, 2025                    Respectfully Submitted,

    /S/     *Richard W. Raynor*
RICHARD W. RAYNOR
Attorney for Defendant
JESUS ESTEBAN FELIX JR.