# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NUMBER CR 12 00527 |
| v. | **AFFIDAVIT IN SUPPORT OF REQUEST FOR EXTRADITION** |
| **JESUS FELIX-ALVAREZ,** Alias LilM Alias Junior | |

I, Timothy J. Searight, being duly sworn, depose and state:

1.      I reside in the United States of America.

2.      In 1990, I received a Juris Doctor degree from the University of California, Hastings College of Law. I was admitted to the State Bar of California in December 1990. From December 1990 to May 1997, I was employed as a Deputy District Attorney for the County of Riverside, State of California.   My duties in that office included the prosecution of persons charged with violations of California state criminal laws.   From June 1997 through the present, I have been employed as an Assistant United States Attorney for the Central District of California in the cities of Los Angeles and Santa Ana, California. As an Assistant United States Attorney, my duties include prosecuting persons charged with criminal violations of the laws of the United States. I have personally represented the United States in cases against numerous defendants charged with violations of federal criminal laws. Based on my training and experience, I am knowledgeable in the criminal laws and procedures of this district and the United States.

3.      During my tenure in the United States Attorney's Office, I have become particularly knowledgeable in that area of criminal law relating to violations of the federal controlled substances statutes, including conspiracy to possess with intent to distribute and to distribute controlled substances; operating a continuing criminal enterprise; possession with intent to

Alvarez PT Mx 000004

distribute controlled substances; distribution of controlled substances; and use of a communication facility in committing a felony drug offense.

4.   In the course of my official duties, I have become familiar with the charges and the evidence in the case against JESUS FELIX-ALVAREZ, alias LilM, alias Junior (FELIX-ALVAREZ), entitled United States v. John Darrell Krokos, et al., Case Number CR 12 00527 (also known as 2:12-cr-00527-GW and CR 12 00527 3), which arose out of an investigation into a drug trafficking organization responsible for the importation of large quantities of cocaine from Mexico into the Los Angeles, California area; the subsequent transportation of cocaine to other cities in the United States and Canada for distribution; and the collection and smuggling of large quantities of cash proceeds from the sale of drugs in the United States to organization members in Mexico.

## THE CHARGES AND PERTINENT UNITED STATES LAW

5.   Under the laws of the United States, a criminal prosecution may be commenced by a grand jury on its own decision to return and file an indictment with the clerk of the United States District Court. A grand jury is composed of 16 to 23 people whom the United States District Court selects at random from the residents of that district. The grand jury is an independent body empaneled by the court. The purpose of the grand jury is to examine the evidence of crimes presented to it by United States law enforcement authorities. After independently reviewing this evidence, each member of the grand jury must determine if there is probable cause to believe that a crime has been committed and that the particular defendant or defendants committed the crime. After at least 12 grand jurors affirmatively vote that there is probable cause to believe that the defendant committed the crime or crimes, the grand jury may return an indictment. An indictment is a document that formally charges the defendant

2

Alvarez PT Mx 000005

with a crime or crimes, describes the specific laws that the defendant is accused of violating, and describes the acts of the defendant that are alleged to be violations of the law.

6.    After the grand jury returns the indictment, a warrant for the defendant's arrest is issued at the direction of a United States District Judge or Magistrate Judge; the court must issue an arrest warrant for each defendant charged in the indictment. The arrest warrant may be signed by a judge or the clerk of the court. Under United States law, the arrest warrant is simply a document authorizing a law enforcement officer to take physical custody of a defendant and bring him or her to court to answer the charges contained in the indictment. The type of detail on the face of an arrest warrant regarding the charges against a defendant can vary by district. The fact that an arrest warrant summarizes the outstanding charges in words, provides only some of the relevant statutory citations, or merely references the indictment does not alter the validity of the arrest warrant to authorize a defendant's arrest on all the charges contained in the corresponding indictment. Under United States law, it is the indictment, and not the arrest warrant, that controls the specific number and type of offenses with which a defendant is charged.

7.    On May 31, 2012, a federal grand jury sitting in the Central District of California returned and filed an Indictment against FELIX-ALVAREZ, charging him with the following offenses: in Count One with conspiracy to possess with the intent to distribute and to distribute at least five kilograms of cocaine, in violation of Title 21, United States Code, Section 846; in Count Two with operating a continuing criminal enterprise, in violation of Title 21, United States Code, Section 848(a); in Count Four with possessing with intent to distribute at least five kilograms of cocaine, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(ii), and Title 18, United States Code, Section 2(a); and

3

Alvarez PT Mx 000006

in Count Fifteen with using a communication facility to commit a felony drug offense, in violation of Title 21, United States Code, Section 843(b) and Title 18, United States Code, Section 2(a). Cocaine is a Schedule II controlled substance, pursuant to Title 21, United States Code, Section 812.[1]

8.  Based on the charges in the Indictment, on May 31, 2012, the United States District Court for the Central District of California issued a warrant for the arrest of FELIX-ALVAREZ. This arrest warrant remains valid and executable to apprehend FELIX-ALVAREZ to stand trial for the crimes with which he is charged in the Indictment.[2]

9.  It is the practice of the United States District Court for the Central District of California to retain the original indictment and arrest warrant and to file them with the records of the court. Therefore, I have obtained certified copies of the Indictment and arrest warrant from the Clerk of the Court and have attached them to this affidavit as **Exhibit A** and **Exhibit B**, respectively. Please note that the signature of the foreperson of the grand jury has been redacted from the Indictment pursuant to the rules of the United States District Court for the Central District of California for purposes of public safety.

10. The relevant portions of the statutes cited above are attached to this affidavit as **Exhibit C**. Each of these statutes was duly enacted and in force at the time the offenses were committed and at the time the Indictment was returned. These statutes remain in full force and effect. A violation of any of these statutes constitutes a felony under the laws of the United States.

---

1 Extradition is being sought only for the offenses in the Indictment that include FELIX-ALVAREZ.
2 The arrest warrant for FELIX-ALVAREZ was signed and filed on May 31, 2012, the same day a grand jury returned an indictment against him. The heading of the warrant includes a filing date of "5/18/12", or May 18, 2012. This date is a clerical error and does not affect the validity or viability of the arrest warrant for FELIX-ALVAREZ.

4

Alvarez PT Mx 000007

11. FELIX-ALVAREZ is charged in the Indictment with the offense of conspiracy. Under United States law, a conspiracy is simply an agreement to violate other criminal statutes, in this instance, the laws prohibiting the possession and distribution of controlled substances in the United States. In other words, under United States law, the act of combining and agreeing with one or more persons to violate United States law is a crime in and of itself. Such an agreement need not be formal and may be simply a verbal understanding. A conspiracy is deemed to be a partnership for criminal purposes in which each member or participant becomes the agent or partner of every other member. A person may become a member of a conspiracy without full knowledge of all the details of the unlawful scheme or the names and identities of all the other alleged conspirators. Accordingly, if a defendant has an understanding of the unlawful nature of a plan and knowingly and willfully joins in that plan on one occasion, that is sufficient to convict him or her for conspiracy even if he or she had not participated before and even if he or she played only a minor part. Similarly, a defendant need not be aware of all the acts of his or her co-conspirators to be held liable for these acts, provided that he or she is a knowing member of the conspiracy, and the acts of the co-conspirators were foreseeable and within the scope of the conspiracy.

12. Because United States law is founded in large part on the English common law system, the law is found not only in codified statutes but also in binding judicial decisions. To support a conspiracy conviction under Title 21, United States Code, Section 846, the United States must show that an agreement existed between two or more persons to commit a drug offense and that the defendant joined in the agreement knowing of its purpose and intending to help accomplish that purpose. United States v. Collazo, 984 F.3d 1308 (9th Cir. 2021). Further, the commission of any overt acts in furtherance of the conspiracy need not be proven

Alvarez PT Mx 000008

(United v. Shabani, 513 U.S. 10 (1994)), and evidence that a defendant had knowledge of, participated in, and briefly joined a conspiracy to import a controlled substance is sufficient. United States v. Miller, 67 F. App'x 430 (9th Cir. 2003). To establish a drug conspiracy, the prosecutor must prove there was an agreement to accomplish an illegal objective and the intent to commit the offense. United States v. Iriarte-Ortega, 113 F.3d 1022 (9th Cir. 1997). The relevant portions of these rulings as they apply to the conspiracy charge are included in **Exhibit C**.

13. Count One of the Indictment charges FELIX-ALVAREZ with conspiracy to possess with intent to distribute and to distribute cocaine. Regarding the felony conspiracy offense charged in Count One, the United States must show that one or more persons agreed to accomplish a common and unlawful plan, namely to possess with the intent to distribute and to distribute controlled substances, and that FELIX-ALVAREZ joined in the agreement knowing of its purpose and intending to help accomplish that purpose. The maximum prison term for a violation of Title 21, United States Code, Section 846, as charged in Count One of the Indictment is a term of life imprisonment.

14. Count Two of the Indictment charges FELIX-ALVAREZ with participating in a continuing criminal enterprise, in violation of Title 21, United States Code, Section 848(a). Regarding the felony offense charged in Count Two, the United States must show (1) that FELIX-ALVAREZ committed the violations of conspiracy to possess with intent to distribute and to distribute a controlled substance, in violation of Title 21, United States Code, Section 846, as charged in Count One of the Indictment, and possession with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), as charged in Count Four of the Indictment; (2) that the violations were part of a series of three

6

Alvarez PT Mx 000009

or more violations committed by FELIX-ALVAREZ over a definite period of time; (3) that FELIX-ALVAREZ committed the violations together with five or more other persons; (4) that FELIX-ALVAREZ acted as an organizer, supervisor, or manager of the five or more other persons; and (5) that FELIX-ALVAREZ obtained substantial income or resources from the violations. The maximum prison term for a violation of Title 21, United States Code, Section 848(a), as charged in Count Two of the Indictment is a term of life imprisonment.

15. Count Four of the Indictment charges FELIX-ALVAREZ with possession with intent to distribute cocaine, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(ii) and Title 18, United States Code, Section 2(a). Regarding the felony offense charged in Count Four, the government must show that FELIX-ALVAREZ possessed cocaine, and second, that FELIX-ALVAREZ possessed it with intent to distribute it to another person.

16. Count Four of the Indictment also charges that FELIX-ALVAREZ committed the offense by aiding and abetting the crime, as provided by Title 18, United States Code, Section 2. Under Title 18, United States Code, Section 2, whoever commands, procures, assists in, or causes the commission of a crime shall be held accountable and punished in the same manner as the principal, or the person who actually carried out the task. This means that the guilt of a defendant may also be shown even if he did not personally perform every act involved in the commission of the crime charged. The law recognizes that, ordinarily, anything a person can do for himself or herself may also be accomplished through direction of another person as an agent, or by acting together with, or under the direction of, another person or persons in a joint effort. Therefore, if the acts or conduct of an agent, employee, or other associate of a

7

Alvarez PT Mx 000010

defendant were willfully directed or authorized by the defendant, or if the defendant aided or abetted another person by willfully joining together with that person in the commission of a crime, then the law holds the defendant responsible for the conduct of that other person just as though the defendant had engaged in that conduct him- or herself.

17. Count Fifteen of the Indictment charges FELIX-ALVAREZ with using a communication facility to commit a felony drug offense, in violation of Title 21, United States Code, Section 843(b) and Title 18, United States Code, Section 2(a). Regarding the felony offense charged in Count Four, the government must show that FELIX-ALVAREZ knowingly or intentionally used a communication facility, that is, a telephone, in committing, causing, and facilitating the commission of an act constituting a felony violation of Title 21, United States Code, Section 846, that is, conspiracy to possess with intent to distribute and to distribute cocaine.

18. Count Fifteen of the Indictment also charges that FELIX-ALVAREZ committed the offense by aiding and abetting the crime, as provided by Title 18, United States Code, Section 2. As described above, under Title 18, United States Code, Section 2, whoever commands, procures, assists in, or causes the commission of a crime shall be held accountable and punished in the same manner as the principal, or the person who actually carried out the task. This means that the guilt of a defendant may also be shown even if he did not personally perform every act involved in the commission of the crime charged. The law recognizes that, ordinarily, anything a person can do for himself or herself may also be accomplished through direction of another person as an agent, or by acting together with, or under the direction of, another person or persons in a joint effort. Therefore, if the acts or conduct of an agent, employee, or other associate of a defendant were willfully directed or

8

Alvarez PT Mx 000011

authorized by the defendant, or if the defendant aided or abetted another person by willfully joining together with that person in the commission of a crime, then the law holds the defendant responsible for the conduct of that other person just as though the defendant had engaged in that conduct him- or herself.

19. I have also included, as part of **Exhibit C**, the relevant text of Title 18, United States Code, Section 3282, which is the statute of limitations on the prosecution of the crimes charged in the Indictment. The statute of limitations requires that a defendant be formally charged within five years of the date that the offense or the offenses were committed. Once an indictment is filed in a federal district court, as in the case against FELIX-ALVAREZ, the statute of limitations is tolled and no longer runs. This prevents a criminal defendant from escaping justice by avoiding apprehension and remaining a fugitive for an extended period of time. In addition, under the laws of the United States, the statute of limitations for a continuing offense, such as conspiracy, begins to run upon the conclusion or completion of the offense, not upon the date it commenced.

20. I have thoroughly reviewed the applicable statute of limitations, and the prosecution of the charges in this case is not barred by the statute of limitations. Because the applicable statute of limitations is five years, and the Indictment, which charges criminal violations occurring between 2009 and 2012, was filed on May 31, 2012, FELIX-ALVAREZ was formally charged within the specified five-year time period.

21. As demonstrated in this request, the United States will prove its case against FELIX-ALVAREZ through eyewitness testimony and through physical evidence including narcotics, currency, lawfully obtained e-mail communications, and lawfully recorded telephone conversations involving the defendants and their coconspirators.

9

Alvarez PT Mx 000012

22.    FELIX-ALVAREZ has not been tried or convicted for the offenses charged in the Indictment, nor has he been ordered to serve any sentence in connection with this case. Of FELIX-ALVAREZ's codefendants, seventeen have pled guilty and been sentenced, two are fugitives, and one was a fugitive who died prior to being apprehended on the offenses charged in the Indictment.

## SUMMARY OF THE FACTS

23.    An investigation by law enforcement authorities identified a drug trafficking organization based in Los Angeles, California and Culiacan, Mexico, was responsible for importing large quantities of cocaine from Mexico into the United States for distribution and transporting drug proceeds from the United States to Mexico. Defendant Jesus Esteban Felix-Leon (Felix-Leon) was the leader of the drug trafficking organization (the Felix-Leon Organization). One of the Felix-Leon Organization's primary customers was a co-defendant in the case named John Darrell Krokos (Krokos). Through lawfully authorized interceptions of communications, combined with seizures of cocaine and money, surveillance, and other investigatory tactics, agents identified numerous shipments of cocaine and money that were delivered or attempted to be delivered between Krokos's Canadian customers and the Felix-Leon Organization, which were facilitated and overseen by Krokos and co-conspirators acting on his behalf. The investigation identified FELIX-ALVAREZ, Felix-Leon's son, as one of the organization's U.S.-based leaders and organizers responsible for directing, managing, and overseeing the organization's drug trafficking activities, including sales and shipment of cocaine to Krokos and to Krokos's associates. FELIX-ALVAREZ directed additional co-conspirators within the United States to receive the cocaine when it arrived and to collect and send the narcotics proceeds back to Mexico. Through the investigation,

10

Alvarez PT Mx 000013

the Felix-Leon Organization, including FELIX-ALVAREZ, were responsible for numerous shipments of cocaine and money that were delivered or attempted to be delivered between Krokos's Canadian customers and the Felix-Leon Organization, which were facilitated and overseen by FELIX-ALVAREZ.

24.    For example, in May 2011, investigating agents intercepted e-mail communications between FELIX-ALVAREZ, and others indicating that co-conspirator Rigoberto Ortega-Guzman (Ortega-Guzman) had received a 44-kilogram shipment of cocaine that had been sent across the U.S.-Mexico border. On May 3, 2011, investigating agents watched Ortega-Guzman deliver three boxes containing the cocaine at a residence located in Downey, California (the Downey residence). Based on intercepted e-mails, investigating agents learned that, on May 5, 2011, Ortega-Guzman sold 15 kilograms of the cocaine to an unidentified co-conspirator. Investigating agents obtained a lawfully issued search warrant authorizing the search of the Downey residence. Inside the Downey residence, investigating agents seized 29 kilograms of cocaine. Ortega-Guzman was not arrested, nor did investigating agents seize the proceeds of the sale of 15 kilograms of cocaine earlier that day. Based on intercepted e-mails, agents learned that, following the May 5, 2011, search, Ortega-Guzman lied to FELIX-ALVAREZ and Felix-Leon and stated that law enforcement seized both the 29 kilograms stored at the Downey residence in addition to the proceeds of the Ortega-Guzman's sale of 15 kilograms of cocaine. FELIX-ALVAREZ and Felix-Leon believed that Ortega-Guzman was lying, and accordingly they kidnapped and tortured Ortega-Guzman.

25.    I have attached to this affidavit, as **Exhibit D**, the original affidavit of Gabriel Perez, Special Agent of the United States Drug Enforcement Administration. In his affidavit, Special Agent Perez summarizes the investigation into the drug trafficking activities of FELIX-ALVAREZ

11

Alvarez PT Mx 000014

and the evidence that resulted in the Indictment in this case. Attached to Special Agent Perez's affidavit and made a part of this extradition request are photographs of the cocaine seized during this investigation, a certified laboratory report for the cocaine seized during this investigation, and lawfully intercepted communications in which FELIX-ALVAREZ and his associates discuss drug trafficking activities. I also have attached to this affidavit, as **Exhibit E**, the declaration of ███████████████, in which he describes his first-hand knowledge of FELIX-ALVAREZ's criminal activities.

## IDENTIFICATION

26. JESUS FELIX-ALVAREZ, alias LilM, alias Junior, is a citizen of the United States, born on October 8, 1992, in Los Angeles, California. He is currently residing in Culiacan, Sinaloa, Mexico. He is described as a Hispanic male, approximately 5 feet 8 inches tall, weighing approximately 170 pounds, with brown hair and green eyes.

27. A photograph of FELIX-ALVAREZ is attached to Special Agent Perez's affidavit and made part of this extradition request. ███████████████ has identified this photograph as depicting FELIX-ALVAREZ, the individual involved in the drug trafficking activities described above.

//

//

//

//

## CONCLUSION

28. This affidavit and the affidavit of Special Agent Perez each were sworn to before a United States Magistrate Judge for the Central District of California, who is a person duly

12

Alvarez PT Mx 000015

empowered to administer an oath for this purpose. The declaration of █████

████████ was signed under penalty of perjury pursuant to Title 28, United States

Code, Section 1746.

Timothy J. Searight
Assistant United States Attorney
Central District of California


SWORN AND SUBSCRIBED BEFORE ME

ON _August    8_, 2022.

HON. STEVE KIM
UNITED STATES MAGISTRATE JUDGE
CENTRAL DISTRICT OF CALIFORNIA

13

Alvarez PT Mx 000016