

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - CENTRAL DIVISION

HONORABLE GEORGE H. WU, U.S. DISTRICT JUDGE

UNITED STATES OF AMERICA,

                Plaintiff,

    vs.                        Case No. CR-12-527

JESUS ESTEBAN FELIX, JR.,

                Defendants.

_____/

REPORTER'S TRANSCRIPT OF
MOTION TO DISMISS
Thursday, September 19, 2024
8:00 A.M.
LOS ANGELES, CALIFORNIA

_____

TERRI A. HOURIGAN, CSR NO. 3838, CCRR
FEDERAL OFFICIAL COURT REPORTER
350 WEST FIRST STREET, ROOM 4311
LOS ANGELES, CALIFORNIA  90012
(213) 894-2849

UNITED STATES DISTRICT COURT

**APPEARANCES OF COUNSEL:**

**FOR THE PLAINTIFF:**

UNITED STATES ATTORNEY'S OFFICE
BY:  TIMOTHY JAMES SEARIGHT
     THOMAS JAMES MAGANA
      Assistant United States Attorneys
United States Courthouse
312 North Spring Street
Los Angeles, California  90012

**FOR THE DEFENDANT:**

LAW OFFICES OF RICHARD W. RAYNOR
BY:  RICHARD W. RAYNOR
     Attorney at Law
409 N. Pacific Coast Highway, Suite 280
Redondo Beach, California  90277

**UNITED STATES DISTRICT COURT**

**LOS ANGELES, CALIFORNIA; THURSDAY, SEPTEMBER 19, 2024**

**8:00 a.m.**

**--oOo--**

THE COURTROOM DEPUTY:  Please remain seated and come to order.  This United States District Court is now in session. The Honorable George H. Wu, judge presiding.

THE COURT:  Let me call the matter of *United States versus Felix-Alvarez.*

Let me have appearances, starting with government counsel.

MR. SEARIGHT:  Good morning, Your Honor.  Tim Searight on behalf of the government.

MR. RAYNOR:  Good morning, Your Honor.  Richard Raynor on behalf of Jesus Felix-Alvarez.

THE COURT:  I have issued a tentative of this.  I presume both sides have seen it.

MR. RAYNOR:  Yes, Your Honor.

MR. SEARIGHT:  Yes.

THE COURT:  Does somebody want to argue something?

MR. RAYNOR:  Yes Your Honor.

THE COURT:  Okay.

MR. RAYNOR:  Your Honor, the government has basically said that our motion to dismiss is something that

we're essentially seeking a summary judgment and we're looking at facts, and we're looking at sufficiency of the evidence.

THE COURT:  Well, let me stop you, did I say that? The government said that?

MR. RAYNOR:  No, the Court did not say that.

THE COURT:  If I didn't adopt the government's position, why do you care?

MR. RAYNOR:  Well, because I think that there are some facts that the Court can consider.

And I think that in the Court's ruling it did indicate to an extent, we're not looking at facts.

I just wanted to point a couple of cases to the Court's attention that involved challenges to the sufficiency, or sorry, to an indictment.

The U.S. v Brown case out of the Tenth Circuit, 925 F.2d. 1301, and United States versus Risk, 843 F.2d. 1059.

And basically, if the facts are essentially uncontested or essentially accurate, that the Court can consider those undisputed or undisputed facts.

So, you know, we did include two things that were outside the four corners of the indictment, such as the grand jury testimony of the case agent, and also the declaration of government counsel.

THE COURT:  Let me stop you, which of the Court's rulings are you arguing at this point?

**UNITED STATES DISTRICT COURT**

MR. RAYNOR:  This has to do with the motion to dismiss.

THE COURT:  For outrageous government conduct?

MR. RAYNOR:  No.  For insufficiency of the failure to state a claim and for defects in the institution of the proceedings.

THE COURT:  Okay.

MR. RAYNOR:  Even with what the Court can see from the indictment itself, really, this is the big question, is Mr. Felix Jr., who was 17-years-old during all but the transaction involving Ortega, is he a teenage kingpin?

And I suggest that like these other cases, where the Court can take a look at the allegations, and also, other undisputed facts and see he clearly is not.

It's something of great import in that the offense carries a 20-year mandatory minimum.

And with the -- just even looking at the indictment itself, it's alleged as a means, really, there is only two things that are alleged as means as to Mr. Felix Jr.

One, is that he is one of the suppliers, both he and his dad are suppliers, and also he was involved in the kidnapping of Ortega.

So from that very slim information, I think it's augmented by undisputed facts that when the government was asking Mexico to extradite Mr. Felix Jr., they were saying,

yes, he's involved with the Felix Leon Drug Trafficking Organization, which is, you know -- which Felix Leon is his father.

So I would suggest to the Court that it can see from both what it is that he's alleged to have done, and --

THE COURT:  Well, let me stop you.

Again, I'm a little bit confused here.  You did make a separate request for bill of particulars, which I am granting in part.

MR. RAYNOR:  Yes.

THE COURT:  So, if I grant that in part, you know again, what you are trying to argue, I kind of agree if that is the nature of your argument at this point in time, I agree with the government that you are attempting to make a summary motion at this point in time, which is not what is normally done, normally how the matter proceeds.

But if, for example, you are arguing that they haven't established sufficient details for why they consider him a kingpin, et cetera, et cetera, you can make a request for further bill of particulars.

But I have indicated that insofar as your request for the -- who is supposedly his supervisees are, et cetera, et cetera, which goes towards what you are arguing about, I'm going to be granting that aspect of it.

MR. RAYNOR:  Very good.  Your Honor, I just wanted

to represent this additional argument.

But I will jump now to the issue of bill of particulars and also, I thank the Court for the tentative and I ask the Court to grant that.

But I would ask the Court to expand beyond disclosure of the substantial income and resources.

I would also ask -- you know, the government says that as to the five supervisees, that they are still working on it. They are still preparing for trial.

It's been 12 years.  Trial is set for next month.  It's time to fish or cut bait.

I would say, in particular, just as a practical matter, the type of information that we need to defend the issue about five supervisees.

There is case law that talks about sufficiency of the evidence as to having five supervisees, and it takes into account the relationship between the defendant and the purported supervisees.

So is the defendant a supplier to supervisees?  Is the defendant a customer?  What is the relationship?

And so, that requires that we do some investigating relating to each of those five persons.

THE COURT:  I understand your argument, let me hear response from the government to the defense counsel's argument so far.

MR. SEARIGHT:  With respect to the five or more persons, we do have that outlined in the government's response.

I will just represent to the Court, in addition to those five, the case agent did tell me that there was a person that she only knew by a moniker, that she also believed was at least one person.

So, the core of individuals is what is listed in the government's response there.

I entirely think it would be appropriate at trial for there to be jury findings as to those five individuals, and the requirement that there be unanimity as to those five persons.

The government would anticipate it will provide such findings.

THE COURT:  Once the government does identify all of those individuals, doesn't the defendant have -- I guess he is going to be a necessity of investigating those five individuals, isn't he?

MR. SEARIGHT:  Yes.

THE COURT:  Well, if the matter is supposed to go to trial in the very near future, what is supposed to happen?

MR. SEARIGHT:  Those five individuals are fairly well set forth, the government believes in the discovery materials.

None of them are great surprises.  Several of them are listed as named co-defendants in the case.

The fourth, fifth, sixth or seventh, the government just needs to spend a little bit of time, it may be that we will list more five.

THE COURT:  Well again, the defense has to investigate as to those persons who are identified.

MR. SEARIGHT:  Yes.

THE COURT:  Why don't I do this, I mean, the matter is currently set for a trial on the 29th of October, so I will require the government to fish or cut bait and provide that information to defense counsel no later than the 30th of September.

You have identified those individuals, and I want a new submission to defense counsel, which actually does list all of them on that date.  Even if you identified them before, I want you to give a new list that identifies them all, so there is no dispute as to which are the individuals that the government is going to be referencing.

MR. SEARIGHT:  Yes, Your Honor.  Perhaps, this is a good point to take up the ancillary point on substantial income.

The government was intending to send an e-mail or perhaps a letter to Mr. Raynor further delineating the substantial income points.

THE COURT:  All right.

MR. RAYNOR:  We would ask it be done as a bill of

particulars.

THE COURT:  Sorry, as a bill of particulars?

MR. RAYNOR:  Yes.  In other words, not just send an e-mail for them to file a bill of particulars as to the substantial income.

THE COURT:  Let me ask the government, do you have any problem with that?

MR. SEARIGHT:  No, I don't see a substantial difference.

MR. RAYNOR:  One other thing was as to five or more persons to -- because some of them are -- it appears from the discovery -- are involved in independent drug transactions, it would be helpful to know what role that the supervisees has in relation to Mr. Felix Jr., aside from manager.

THE COURT:  Let me ask the government, do you have a problem with that?

MR. SEARIGHT:  Yes.  That would seem to be in the nature of a discovery request.

Again, the reports and materials are out there.  None of these names with the exception of the one, perhaps, who is known by a moniker, is going to be any surprise.

For the most part, they are co-defendants in the case.

So delineating exactly what the government's presentation will be, and what it will be with regard to --

THE COURT:  Let's put it this way, I will require

the government to provide those individuals who are not named as co-defendants.  I agree they are co-defendants, obviously as to the nature of the relationship, but as to the those individuals who are not named as co-defendants, then you will put a short paragraph as to the nature of the relationship and those individuals.

MR. SEARIGHT:  I understand.

MR. RAYNOR:  Thank you very much.

THE COURT:  Is there anything else?

MR. RAYNOR:  No.

THE COURT:  That's it?

MR. RAYNOR:  Yes.

THE COURT:  From the government?

MR. SEARIGHT:  Unless there is a particular point on the three motions that are pending that the Court wants the government to address, I don't have anything other than what is in the paperwork.

THE COURT:  You have no disagreement with the Court's ruling as to Count 15?

MR. SEARIGHT:  At this time, no disagreement.

THE COURT:  So I guess I will make my tentative my final, subject to the discussion here this morning.

MR. SEARIGHT:  But a couple of housekeeping matters, if I may?

THE COURT:  Sure.

UNITED STATES DISTRICT COURT

12

MR. SEARIGHT:  We have prepared a joint stipulation moving the trial date.  A couple of things to state is --

THE COURT:  Let me ask before we discuss that, I thought there was a separate motion for Undisputed Trial Act.

MR. RAYNOR:  Yes, Your Honor.  That has been taken off calendar for hearing for today.

The government, I guess, it was maybe 12 days ago, provided an additional declaration and also considering that that was actually more in the nature of an evidentiary hearing and that was -- their witness was not available, they had requested that they have it on some other date.

THE COURT:  Let me just ask, is this continuation subject to the defendant's reserving his right to maintain his motion for dismissal in the Speedy Trial Act, or is he now indicating that he's no longer going to be arguing that?

MR. RAYNOR:  We definitely are arguing it.  We want it heard.

Apparently, the case agent, Agent Burkdoll is out of the country, and we're going to talk about -- perhaps, it is something we should bring up now, I'm not sure whether this is something we will agree to, but the government has proposed Ms. Burkdoll testify by videoconference at that motion to dismiss.

MR. SEARIGHT:  What we're proposing is the hearing on the speedy trial motion on October 24th.

The Court has not issued a tentative ruling on that

UNITED STATES DISTRICT COURT

motion.

It seems very likely that defendant will wish to file a reply brief.

It is correct that the case agent, Agent Burkdoll is now working in Europe.  So she, of course, is requesting dates certain.

I understand there maybe confrontation rights, but we have had a discussion about the possibility of videoconference.

I guess the only question we have for the Court is if the parties reached agreement on that, would it be acceptable to the Court?

THE COURT:  Yes.  In other words, if the parties both sides agree she can testify through, like, Zoom or something of that sort.

I would have no objection to that, as long as both sides agree.

If one side disagrees, I will not do it, I will require in person.  But if both sides agree, I will agree to it as well.

MR. SEARIGHT:  We are tentatively discussing a new trial date of January 20th.

THE COURT:  January the 20th?

MR. SEARIGHT:  Yes.

THE COURT:  Let me ask, Javier, do I have one of the Mexican Mafia cases coming up.

UNITED STATES DISTRICT COURT

14

THE COURTROOM DEPUTY:  That is in February.

THE COURT:  All right.  This case wouldn't take longer than a week to try, I presume?

MR. SEARIGHT:  I would not think so.

THE COURT:  Why don't you give me a stip on all of this, but also couple of things.

I would -- what date did you want it on?

MR. SEARIGHT:  Trial date is January 20th, Speedy Trial motion hearing, October 24.

MR. RAYNOR:  Your Honor, I might want to have that Speedy Trial motion just a little bit later.

THE COURT:  Whatever you guys agree to, is fine with me.

The only thing is if the -- let me ask, Javier, the other trial starts when?

THE COURTROOM DEPUTY:  15th of February.

THE COURT:  The 20th of January -- actually trial on the 21st of January, and the pretrial conference would be on the January the 9th.

MR. SEARIGHT:  Very good.  Also, I think it is in the contemplation of the defendant for a wiretap suppression motion.

THE COURT:  You stipulate to all of that, give it to me, I will sign off on it.

Thank you very much.

**UNITED STATES DISTRICT COURT**

The final ruling on the motions, I will adopt my tentative as my final, and deny the motions, except for the motion for dismiss Count 15, and also the motion for bill of particulars, I will grant that motion for bill of particulars consistent with my ruling in the tentative, but as supplemented by our discussion here in court today.

THE COURT:  Okay.  Thank you.

MR. SEARIGHT:  Thank you, Your Honor.

MR. RAYNOR:  Thank you, Your Honor.

(The proceedings concluded at 8:21 a.m.)

* * *

**UNITED STATES DISTRICT COURT**

**CERTIFICATE OF OFFICIAL REPORTER**

COUNTY OF LOS ANGELES    )
                         )
STATE OF CALIFORNIA      )


            I, TERRI A. HOURIGAN, Federal Official Realtime Court Reporter, in and for the United States District Court for the Central District of California, do hereby certify that pursuant to Section 753, Title 28, United States Code that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the judicial conference of the United States.

Date: 3rd day of April, 2026.


                              /s/ TERRI A. HOURIGAN
                    _____
                    TERRI A. HOURIGAN, CSR NO. 3838, RPR, CRR
                              Federal Court Reporter


**UNITED STATES DISTRICT COURT**